HARRY J. JAQUITH, assignee, *vs.* JOHN DAVENPORT.

SAME *vs.* JOSEPH H. MORRILL.

Suffolk.     November 21, 22, 1907. — February 27, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Insolvency,* Fraudulent preference.

In an action by an assignee in insolvency to recover the value of goods alleged to have been transferred by the insolvent as a fraudulent preference, it cannot be found that transferring goods of the insolvent into the name of a broker's clerk, falsely stating that they are his, and then selling them as the clerk's when they are not his, is a sale in the usual course of business of the insolvent.

In an action by an assignee in insolvency to recover the value of certain cigars alleged to have been transferred by the insolvent as a fraudulent preference, it appeared that the defendant was and had been for many years a teamster, that a merchandise broker, who was a creditor of the insolvent and knew the defendant, summoned the defendant by telephone to meet him at a certain hotel and, on his doing so, told him, in the presence of the insolvent, that he wanted to sell some cigars that the insolvent was overstocked on, as the insolvent wanted some ready money, that the insolvent "needed some money and wanted some help," that the broker led the defendant to expect that he would make some money on the cigars if he bought them, that thereupon the defendant bought the cigars and paid the broker for them, and that the broker kept the money, which went to him or to his shippers, who also were creditors of the insolvent. *Held,* that this transaction could not be found to be a sale in the usual and ordinary course of business of the insolvent.

In an action by an assignee in insolvency of a firm consisting of two partners to recover the value of goods alleged to have been transferred by the insolvent firm as a fraudulent preference, upon the issue whether the defendant at a certain time had reasonable cause to believe that the firm was insolvent, knowledge of the insolvency of the firm is not shown as matter of law by showing knowledge that at the time in question one of the partners was insolvent or in contemplation of insolvency, if at that time the other partner was in good financial standing.

An assignee in insolvency cannot recover as a fraudulent preference the amount paid by the insolvent on notes indorsed by him, if the payments in question were made by the insolvent with funds furnished to him for the purpose by the makers of the notes.

Two ACTIONS OF TORT, by the assignee in insolvency of the joint and several estates of Henry A. Davis of Malden and Henry C. Hathaway of New Bedford, copartners under the firm name of H. A. Davis and Company, respectively against John Davenport and Joseph H. Morrill, for the value of certain goods and certain sums of money alleged to have been delivered and paid to the defendants as fraudulent preferences. Writs dated respectively October 1, 1897, and May 26, 1897.

These two cases, together with a third case against one Antonio F. Rico, by order of the Superior Court were sent to an auditor, and, after the filing of his report, were tried together before *Stevens*, J., without a jury. He found for the defendant in each of the cases, and the plaintiff alleged exceptions. The exceptions in the case against Rico were overruled, but those in the cases against Davenport and Morrill were sustained, in a decision reported in 191 Mass. 415.

The cases against Davenport and Morrill were tried again before *Hitchcock*, J., without a jury. The material facts are stated in the opinion. The judge found for the defendant in each of the cases; and the plaintiff alleged exceptions, raising the questions which are stated in the opinion.

*W. R. Bigelow*, for the plaintiff.

*C. W. Bartlett & A. T. Smith*, for the defendants.

LORING, J. These are two of the three actions before this court in *Jaquith* v. *Davenport*, 191 Mass. 415. The action against Rico then before the court was disposed of by the decision made at that time. The other two cases went back for a new trial and are now before us on exceptions taken there.

The action against Davenport is an action by the plaintiff as assignee in insolvency of the joint and separate estates of Henry A. Davis and Henry C. Hathaway, doing business as partners under the firm name of H. A. Davis and Company, to recover for two sales and three payments of cash as transfers and payments made in fraud of the insolvent laws. The action against Morrill is for the proceeds of one sale of cigars on the same ground.

The principal but not the only question raised by this bill of exceptions is that to the refusal of the judge to rule that the three sales were sales not made in the usual course of business of the insolvents.

1. The petition against Davis and Hathaway was filed on April 25, 1896. The two sales to Davenport were made on March 11, and March 31, 1896. The three payments to Davenport (which at the trial had also a bearing on the validity of the. sales to him) were made on November 1, 1895, November 3, 1895, and December 12, 1895. The two sales to Davenport are the subjects of counts two and three, and the three payments are covered by counts four, five and six of the declaration in the action brought against him.

The circumstances leading up to the two sales and the three payments to Davenport are in substance as follows:

Some time in 1893 Davis and one Chard, doing business under the firm name of Chard and Davis, failed. At that time one Oliver borrowed $10,700 of the defendant Davenport, " to settle the insolvent affairs of Chard and Davis, . . . and to help Davis through financial straits." For making this loan to him Oliver paid Davenport a bonus of $1000. Davenport testified that on March 12, 1896, the balance then due on this loan (originally for $10,700) was $3,275.14.

The three payments here in question come first in the chronological order, and we will state the facts in that connection before taking up the two sales to this defendant.

The first payment complained of came about as follows: One Kelman made a note payable to and held by the insolvents. They indorsed it to Oliver, and Oliver indorsed it to the defendant Davenport, with the agreement that anything received on it should be credited on the balance due on the loan originally of

$10,700. The note was protested at maturity and afterwards was paid to Davenport by the insolvents as indorsers, and the amount received was credited on March 12, 1896, on the note for $3,275.14, the balance then due on the original loan of $10,700. This payment amounted to $61.02, of which $1.50 were protest fees. This payment was the subject of the fourth count.

The other two payments were similar. The second payment (the subject of the fifth count) was for $60 paid by Davis and Company as indorsers at maturity to the defendant Davenport, the holder by indorsement from Oliver who received it from Davis and Company. The third payment, $300 in amount (the subject of the sixth count), also was paid by Davis and Company as indorsers at maturity. These two notes were received under the same agreement from Oliver, and the proceeds were credited on the balance due on the original loan of $10,700.

The plaintiff's contention was that the original loan of $10,700, although made in Oliver's name, really was made to Davis, and that these notes were transferred through Oliver to the defendant Davenport (the transfer to Oliver being without consideration) to be credited when paid on the debt due from Davis to Davenport. As we have said, these payments were made on November 1, November 3 and December 12, 1895, but were not credited on the note originally for $10,700 until March 12, 1896.

The auditor found that during all this time "Davis" personally was insolvent. No attempt was made to control this finding by evidence at the trial.

The date of the first sale of cigars to Davenport was the day before these three payments, made between three and four months previously thereto, were credited on the Oliver note held by Davenport. The other sale was twenty days later, on March 31, 1896.

The auditor found that "Davis had been financially irresponsible" since the insolvency of Chard and Davis in 1893 "to his present insolvency." In November, 1895, and perhaps early in October, 1895, Davis and Hathaway began a course of dealing in which the auditor found that Davis and Hathaway were

partners.    This finding was not controverted at the trial.    This course of dealing is described by the auditor as follows : " Hathaway, whose rating in the books of the commercial agencies was good at that time, made notes, leaving large numbers of them, signed in blank in the hands of Oliver, who was their joint agent, and who, or whose bookkeeper and agent, one Von der Heide, filled them out as occasion required, and Davis then bought goods with these notes signed by ' Davis & Co.' and indorsed by Hathaway.    The goods so bought were sent to Oliver ostensibly as Hathaway's goods, were sold by Oliver or pledged on notes signed or indorsed by Oliver, and often these goods were sent direct from the depot or wharf to Oliver's store or to Hathaway's room in the warehouse, and often goods were sent from Hathaway's or Davis's store to Oliver's."

On March 11, 1896, and March 31, 1896, cigars bought in the course of dealing above described were sold to the defendant Davenport.    The plaintiff introduced evidence that the two lots of cigars were worth $1,870 and $1,390, and were sold for $1,160 and $1,000 respectively.    The plaintiff's contention was that the difference of $1,100 between the true value and the purchase price was a payment to Davenport on the original loan of $10,700.    The amount then due on that loan (according to Davenport's testimony) was $1,972.30, after the three payments mentioned above and some others had been credited on March 12, 1896.    His contention is that the transfer, having been made to give this preference to Davenport, was void.    It appeared from the schedules of the insolvents that their assets amounted to $50 and their debts to $29,722.50.    The judge was warranted in finding that $29,722.50 was to some extent at least due for cigars bought and not paid for.

The defence, or at any rate the main defence, set up to this claim was that these goods were sold honestly by Davis or Hathaway, or Davis and Hathaway, to Von der Heide, and by him were sold through Oliver as a broker to the defendant. Von der Heide, for seven or eight years before the date of these sales, had been, then was and thereafter for four or five years continued to be, Oliver's bookkeeper.    He had no place of business of his own.

If the judge had believed that the two lots of cigars sold to the defendant were in reality the property of Von der Heide and not the property of Davis or Hathaway or Davis and Hathaway standing in Von der Heide's name, when they were sold to the defendant, the request to rule that these sales were " not in the usual course of business of Hathaway " would have been rightly refused as immaterial. If the cigars were really Von der Heide's cigars, no question could arise as to the sale to Davenport being or not being in the usual course of the business of Hathaway or Davis or Davis and Hathaway.

But on this record it must be taken that the judge found that the cigars were the property of Hathaway or Davis or Davis and Hathaway at the time of the sale in question, and were not the cigars of Von der Heide ; for in his finding he states of all five counts that the plaintiff must prove (1) " insolvency or contemplation of insolvency . . . of Davis and Hathaway at the time of the sales of the goods and at the time of the payments referred to " ; (2) " an intention at the time of the sales of the goods and the payments " to give a preference ; and (3) " knowledge on the part of the defendant, or reasonable cause to believe, Davis and Hathaway, or either of them, to be then insolvent, or in contemplation of insolvency or to believe that such sales and payments were made in fraud of the laws relating to insolvency." The judge then states in his finding that " The plaintiff fails to sustain the burden incumbent upon him upon the third point and it is found as a fact that the defendant did not have reasonable cause to believe that Hathaway or Davis were insolvent at the time of the purchase of the goods, or that the sales or conveyances were made in fraud of the laws relating to insolvency, or that the payments were made in fraud of the laws relating to insolvency."

In that status of the case the rulings asked for were material and should have been given.

It is too plain for argument that transferring goods into the name of the broker's clerk, falsely stating that they are his (the clerk's) and selling them as the clerk's when they were not his, is not a sale in the usual course of business of the true owner.

2. The exceptions taken to the refusal to give the fourteenth and fifteenth rulings* asked for must be sustained.

Morrill was and had been a teamster for about thirty years, and he lived out of town. He had known Oliver since he was an errand boy in a grocery. On being asked by Oliver on the telephone to do so, he went to the Hotel Reynolds in Boston, " some time in February, 1896," and met him, Oliver, and Hathaway. Oliver told Morrill that he " wanted to sell some cigars that Hathaway was overstocked on, he claimed, and wanted some ready money." Morrill testified that " Oliver told me Hathaway's circumstances, that he needed some money and wanted some help." Oliver led him to expect to make some money on the cigars if he bought them. Thereupon he bought the cigars and paid Oliver for them. The evidence stated in the bill of exceptions showed that this money went to Oliver or Oliver's shippers, to both of whom Hathaway or the firm then were indebted.

Without question the transaction was not in the usual course of business of Morrill. But that is not the question. The question is whether the sale was one not made in the usual and ordinary course of business of Davis and Hathaway.

Again, the question is not whether the sale was one not in the usual and ordinary course of business throughout the community, but whether it was one not in the usual and ordinary course of business of the insolvents as the insolvents carried on their business. Hoar, J., in *Nary* v. *Merrill*, 8 Allen, 451, 453.

And lastly, the question before us is not whether the judge could have found the transaction to be one not in the usual course of the business of Davis and Hathaway, that is to say, a case where the judge could have found one way or the other on the evidence, as in *Killam* v. *Peirce*, 153 Mass. 502. The ques-

---

* The rulings held to have been refused erroneously were as follows :

" 14. The conveyance of the cigars in Exhibit B was not in the usual course of business of Hathaway, and the defendant upon all the evidence is held to have reasonable cause to believe that Hathaway was then insolvent or in contemplation of insolvency.

" 15. The conveyance of the cigars in Exhibit C was not in the usual course of business of Hathaway, and the defendant upon all the evidence is held to have reasonable cause to believe that Hathaway was then insolvent or in contemplation of insolvency."

tion here is whether on the evidence he was bound to find as matter of law that the sale was not in the usual course of the business of Davis and Hathaway, and so in the class of cases like *Nary* v. *Merrill*, 8 Allen, 451.

There is little or no evidence in the bill of exceptions as to what the usual course of business of Davis and Hathaway was. The auditor found that they bought tobacco through Oliver with the proceeds of notes signed or indorsed by Hathaway (whose credit was good while that of Davis was bad), and sold this tobacco through Oliver. The auditor found that the tobacco was stored sometimes in Oliver's store and sometimes in " Hathaway's room in the warehouse." Von der Heide testified that " Hathaway's goods were stored in a private room at the Metropolitan Warehouse Company in Boston, and that Oliver kept the key to the room, and that none of the goods were kept in Oliver's store."

Apparently neither Davis nor Hathaway had any place of business.

The fact that the sale was made by Oliver as a broker outside of Oliver's store would not make the sale one not in the usual course of the business of the insolvents.

Neither is the fact that Oliver told Morrill that Hathaway was overstocked and wanted some ready money, enough.

But taking all the circumstances together, the fact that Morrill was summoned by telephone or telegraph from out of town, and that he was summoned to the Hotel Reynolds and there met both the principal and the broker, and was told that the goods were sold at a bargain because he was overstocked, and that the purchase money was paid to Oliver and not to the insolvents, we are of opinion on the whole that the sale, as matter of law, was not in the usual and ordinary course of the business of the insolvents.

3. The judge could refuse to give ruling 15 a* as immaterial.

---

\* The ruling referred to was as follows :

" 15 a. If the defendant knew that Henry A. Davis was insolvent or in failing circumstances in 1893, and no evidence appears of any change in his financial condition thereafter, the defendant is presumed to have reasonable cause to believe that Henry A. Davis was insolvent or in contemplation of insolvency in the Fall of 1895 and the first three months of 1896."

The issue on that was whether the defendant had reasonable cause to believe that Davis and Hathaway were insolvent or in contemplation of insolvency in the autumn of 1895, and the first three months of 1896. Hathaway was in good financial standing until the insolvency in April, 1896. The financial strength brought to the firm by him was left out of account in this request for a ruling.

4. We are of opinion that the judge could admit the testimony of Manning as to the value of the cigars in the box admitted in evidence at the former trial. It was enough to make the evidence competent that the box was then admitted. Since there were fourteen brands of cigars in question in the Morrill case (in which we understand this testimony was offered), varying from $11.50 to $50 a thousand, this evidence would seem to be of little or no weight unless further evidence of its connection with the case was put in.

5. The judge in his discretion could exclude the evidence that neither H. A. Davis and Company nor Hathaway ever complained of the quality of the tobacco bought by them. The plaintiff insists that this was evidence that the tobacco was worth what Davis and Company paid for it. That evidence might have some tendency to prove that fact. But it is very remote. Moreover, if, as the plaintiff contends, the insolvents were buying tobacco to sell to favored creditors at less than its true value, or to sell to others and use the proceeds to pay favored creditors, they would not care what they agreed to pay for it.

6. The judge found that the three payments in question in counts four, five and six in the action against Davenport were made with funds furnished by the makers of the notes. On the finding the money so furnished was paid to Davis and Company, not as their money, but as the money of the makers in trust to be applied in paying the notes then held by others. Since that was the fact the fraud, if any, consisted in the transfer of the notes, not in their payment. Ruling 15 b * was properly refused.

---

* The ruling referred to was as follows :

" 15 b. If the court finds that Henry A. Davis and Company or Henry A. Davis individually received payment from the makers of the Kelman note, the O'Neil and Hart note, and the C. F. Clark and Company note, or any of

7. To prove that the price paid by Morrill was not less than the true value of the cigars bought by him he introduced evidence that he made $128 profit on this purchase of $4,000. To supplement this he was allowed to prove by Oliver that he had to resell some of the cigars several times. This tended to show that they were not resold without regard to their true value, and in this connection the evidence was competent.

The result is that the entries must be

In the case against Davenport

      On counts 2 and 3 :      *Exceptions sustained.*

      On counts 4, 5 and 6 :      *Exceptions overruled.*

In the case against Morrill :      *Exceptions sustained.*

---

them, before the payment by Davis and Company to Davenport for those three notes as declared on in Counts 4, 5 and 6 of the declaration, such facts would be no defence based on the ground that the insolvent assets were not thereby diminished."