HARRY J. JAQUITH, assignee, *vs.* JOSEPH H. MORRILL
(afterwards ABBIE J. MORRILL, administratrix).

Suffolk.    November 19, 1909. — January 6, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Practice, Civil*, Exceptions, Auditor's report.  *Auditor.   Evidence*, Admitted without objection, Of testimony of deceased witness, Of market value, Presumptions and burden of proof.

No exception lies to the refusal of a judge sitting without a jury to make a finding of fact requested.

Exceptions to the refusals of a judge who heard a case without a jury to make certain rulings requested cannot be sustained, where the findings of fact made by the judge have caused the rulings requested to become inapplicable to the case, or have caused them although applicable to become immaterial.

An action by the assignee in insolvency of the joint and several estates of the members of a business partnership, to recover certain goods alleged to have been received by the defendant fraudulently in violation of the insolvency laws, was referred to an auditor together with two other like actions by the same plaintiff against different defendants.  The auditor made one report covering the three cases, and the cases were tried together before a judge of the Superior Court who found for the defendants.  Exceptions of the plaintiff were sustained.  Later, the two other cases having been otherwise disposed of, the case was tried again before a judge without a jury, and the auditor's report covering the three cases was put in evidence without objection.  In the portions of the auditor's report relating to the other two cases there were certain general findings which were applicable to the case on trial.  No question was raised at the trial in regard to the competency of these findings or their effect as evidence.  The judge found for the plaintiff, and, upon the argument before this court of exceptions alleged by the defendant, the defendant contended that the auditor's report in the other two cases should not have been considered. *Held*, that it was too late to raise the question as to the competency of these portions of the auditor's report, which had been admitted in evidence without objection and must be given their natural probative force.

Evidence which is before a trial court without objection, although upon objection it would have been excluded as incompetent, may be considered in support of the facts which it tends to establish.

At a trial before a judge without a jury, where an auditor's report has been put in evidence which discloses on its face no such manifest error of law as to call for a ruling, the judge is not bound to rule as matter of law upon the effect of certain parts of the report considered apart from other portions of the report with which they are connected and thereby control and set aside the general finding of the auditor.

At the trial of an action in which an auditor's report had been put in evidence, the auditor was called as a witness, and was asked to state the testimony of a deceased witness as it was given at the hearing before him.  He testified that

he was unable to remember the witness's testimony without using his notes, but that he knew that his notes were accurate and that what appeared there was what the witness said before him. The evidence was admitted against objection. *Held,* that the evidence was admitted rightly; that the statement of the auditor that his notes were accurate fairly included the fact that the notes showed everything that the witness had said upon any material matter, that, since the enactment of recent statutes upon kindred subjects, the strictness of the requirements in regard to proving the testimony of a deceased witness has been relaxed, and that the present method of application of the rule, that there must be a close approach to verbal accuracy in giving the substance of the language used by a deceased witness, justified the admission of the evidence.

In an action by an assignee in insolvency of the joint and several estates of the members of a firm of cigar dealers, for the value of certain cigars alleged to have been received by the defendant fraudulently in violation of the insolvency laws, witnesses for the plaintiff, who testified by deposition to sales of cigars in Pennsylvania shortly before the insolvency, were asked to give the fair market value of the cigars thus sold. Their answers were objected to by the defendant on the ground that the questions did not refer to the place in reference to which the value was to be given. The witnesses testified generally, without intimating that there was any difference in the market value of cigars between Pennsylvania and Boston, and there was nothing in the case to indicate that there was any such difference. *Held,* that there was no presumption of fact that articles like cigars, when sold in large quantities, differ materially in value in Massachusetts and Pennsylvania, and that the court could not assume that the testimony in regard to the value of the cigars, given in response to questions not directed in terms to any particular market, was prejudicial to the defendant, in the absence of evidence that there was any material difference between the price of such goods in Boston and the price in Pennsylvania and, if so, which was the higher; and that, whether or not the trial judge exercised his discretion properly in admitting the evidence, the defendant failed to show that he was harmed by its admission.

TORT by the assignee in insolvency of the joint and several estates of Henry A. Davis of Malden and Henry C. Hathaway of New Bedford, copartners under the firm name of Henry A. Davis and Company, against Joseph H. Morrill, for the value of certain cigars alleged to have been received by the defendant fraudulently in violation of the insolvency laws. Writ dated May 26, 1897.

In the Superior Court the case, together with two others, was referred to Theodore H. Tyndale, Esquire, as auditor. He found for the plaintiff against the defendant Joseph H. Morrill for the sales of two lots of cigars, one lot on February 25, 1896, worth $2,562.50 and the other on March 10, 1896, worth $3,040. The case, together with the other two cases, was heard by *Stevens,* J., without a jury. He found for the defendant, and the plaintiff

alleged exceptions, which were sustained by this court in a decision reported in 191 Mass. 415.

The case, together with one of the other cases in which the exceptions also had been sustained, was tried again before *Hitchcock*, J., without a jury. He found for the defendant, and the plaintiff alleged exceptions, which were sustained by this court in a decision reported in 197 Mass. 397.

On January 31, 1908, Joseph H. Morrill died, and on February 19, 1908, Abbie J. Morrill was appointed the administratrix of his estate. On a motion suggesting the death, the administratrix was admitted to defend the action.

In November, 1908, the case was tried for a third time before *Sanderson*, J., without a jury. He made findings of fact, many of which are quoted at length in the opinion. He found that certain cigars described in the plaintiff's declaration were delivered to the original defendant on February 26, 1895, and that their value was then $2,220, that other cigars described in the declaration were delivered to the defendant on March 10, 1896, and that their value was then $3,220, and that the plaintiff was entitled to recover these sums with interest thereon from those dates respectively.

The judge found for the plaintiff in the sum of $9,589; and the defendant alleged exceptions, raising the questions which are stated and disposed of in the opinion.

*A. T. Smith*, (*C. W. Bartlett* with him,) for the defendant.

*W. R. Bigelow* for the plaintiff.

KNOWLTON, C. J. This case has been before us on two former occasions, and is reported in 191 Mass. 415 and in 197 Mass. 397, upon questions quite different from those raised at the last trial.

Of the defendant's fifty-four requests for rulings the greater part related to decisions, upon questions of fact, by the judge who tried the case without a jury. Most of the exceptions relate to matters of fact, and to the construction that should have been put upon certain evidence by the judge, or the construction that is presumed to have been put upon it by the judge or the auditor.

The action is to recover the value of goods alleged to have been sold in fraud of creditors. Upon the plaintiff's theory,

four persons were connected with the fraud, — the two insolvent debtors, the present defendant's intestate, who will hereinafter be called the defendant, and one Oliver, who acted as a broker or agent at different times for some of the parties. The argument of the defendant is founded very largely upon the testimony of three of these witnesses, who, upon the plaintiff's theory, entered into a conspiracy to defraud the creditors of the insolvents Davis and Hathaway, who were copartners under the name of Henry A. Davis and Company. Of course, if the testimony of these witnesses were taken as true, there could be no recovery. As to many of the facts, these witnesses had much more knowledge than any one else, and their testimony as to such facts is more full and definite than that of any other witness. But the whole case of the plaintiff proceeds upon the theory that these witnesses are untrustworthy, that much of their testimony as to the matters directly bearing upon the question of fraud is false, and that circumstantial evidence, taken in connection with numerous established facts, well warranted a finding in favor of the plaintiff. The judge's findings of fact are in part as follows:

" The plaintiff is the assignee in insolvency of the joint and separate estates of Henry A. Davis and Company, of Henry A. Davis and of Henry C. Hathaway. The assignee was appointed upon an involuntary petition. The original petition was filed April 25, 1896, against Henry A. Davis doing business under the name of Henry A. Davis and Company. On May 15, 1896, an amendment was allowed alleging that Henry C. Hathaway was a copartner in the business carried on in the name of Henry A. Davis and Company. On June 16, 1896, it was adjudged by the Court of Insolvency in Suffolk County that said Davis and said Hathaway composed said firm. The date of the first publication of notice in the case against both insolvent debtors. was June 17, 1896.

" The said Henry C. Hathaway was, during the year 1896 and for a long time previously to that year had been a resident of New Bedford in the County of Bristol. He made an assignment for the benefit of his creditors on April 7, 1896. Fifteen days later an involuntary petition in insolvency was filed against him in Bristol County. The first publication of notice on said peti-

tion was made April 23, 1896, and one Charles F. Worthen was appointed assignee in said case on July 3, 1896. The assignee's account in the Bristol County case was filed October 8, 1897. An order of distribution was issued there on October 12, 1897, and this order of distribution was returned November 13, 1897. The assignee of the individual estate of Henry C. Hathaway in Bristol County made no claim to any of the assets involved in these cases. This action had been pending in the Superior Court in Suffolk County for three months before said assignee's account was filed as aforesaid.

" The court finds that Davis and Hathaway were copartners as early as October, 1895, and that they continued to be copartners until insolvency proceedings were instituted. Their joint business was principally, if not solely, buying and selling cigars. One Lindsey N. Oliver, a cigar broker with a place of business in Boston, was the joint agent of Davis and Hathaway in disposing of cigars bought by them. Davis had been practically insolvent since 1893. He did not testify in this case and both Hathaway and Oliver testified that he was out of the State and his residence was unknown to them.

" Hathaway's rating in the mercantile agencies, in the latter part of 1895 and the first part of 1896, was one upon which he could readily get credit among the cigar dealers of the country. Hathaway was in Boston, during the six months before the insolvency proceedings were begun, about two days a week. He testified that he made his headquarters at the Hotel Reynolds and transacted some business there, that his books were kept at Oliver's office, and that Oliver kept the key to a store room rented in Hathaway's name.

" In the fall of 1895, these three men, Davis, Hathaway and Oliver, entered into a conspiracy by which Davis and Hathaway were to buy on credit large quantities of cigars from different dealers, more particularly from dealers in the State of Pennsylvania. Said purchases were to be made upon the credit which would be given to Hathaway's name, because of his rating in the mercantile agencies, and this credit was to be obtained in part by the use of notes with Hathaway's name upon them, and in part by orders to be given for goods by Hathaway personally. All of the cigars so obtained were to be disposed of by Oliver in

such a manner as to prevent them and their proceeds from being attached by creditors of Davis and Hathaway and from coming into the possession of any assignee in insolvency of said Davis and Hathaway. It was further contemplated by the said parties that this course of dealing would result in insolvency proceedings by or against said Davis and Hathaway.

"In pursuance of this plan many notes signed or indorsed by said Hathaway were issued for cigars bought in the name of H. A. Davis and Company. The goods so bought were sent to Oliver, ostensibly as Hathaway's goods, were sold by Oliver or pledged on notes signed or indorsed by Oliver and often these goods were sent direct from the depot or wharf to Oliver's store or Hathaway's room in the warehouse. In many cases in which orders for cigars were sent to Pennsylvania the invoices for the goods came to the store of H. A. Davis and Company and were taken away by Davis although the cigars were not delivered there. In pursuance of said conspiracy, the cigars described in the plaintiff's declaration were purchased upon orders given by Hathaway in his own name. These cigars were ordered in part from cigar dealers in Pennsylvania and there was nothing inconsistent with the inference that they were all so ordered. Oliver arranged with the defendant Morrill, who was an old friend of his, to take the title to these cigars and in making this arrangement he was carrying out his part of said conspiracy. The transfer of these cigars to Morrill was not in the usual course of business of Hathaway or of Davis and Hathaway. It was made with a view to prevent the property from coming to their assignee in insolvency, at a time when Davis and Hathaway, both as a copartnership and individually, were in contemplation of insolvency, and Oliver then knew, and the defendant then had reasonable cause to believe, that Davis and Hathaway were in contemplation of insolvency, and that said transfer was made with a view to prevent the property from coming to their assignee in insolvency. The transaction took place in the Hotel Reynolds, in the early evening, in the month of January or of February, 1896. Oliver telephoned or telegraphed to Morrill to come to the hotel and he there met both Oliver and Hathaway. Oliver told him that Hathaway wanted to sell some cigars, that Hathaway was overstocked and wanted ready money. Morrill

made no inspection of the cigars. He apparently left the whole matter as to the number and kinds of the cigars and the agreed price to Oliver. Both Morrill and Oliver testified that Morrill arranged at the same time with Oliver to sell the cigars for him, and that Oliver's compensation should be one half of the profits on said sales. Oliver was acting as the agent of the defendant in arranging for the transfer of these cigars to him. Morrill, Oliver and Hathaway all testified that Morrill paid $4,000 for these cigars, and two bills for them, receipted by Hathaway, were introduced in evidence, one purporting to be a receipt given February 26, 1896, for $1,685, and the other dated March 10, 1896, for $2,315. Neither Morrill nor his personal representative have produced any checks, bank books or books of any kind to support his claim that he paid this $4,000, and, at an examination by the assignee, soon after insolvency proceedings were begun, he stated that he could find no checks and that he thought he paid cash. Neither Oliver nor Hathaway produced any books of account, nor items of deposit, nor other evidence to support their statement that Morrill paid this money. Furthermore, these witnesses have contradicted each other as to the times when the money was paid, the manner in which it was paid and the person to whom it was paid. They have also made inconsistent statements concerning these matters in their different examinations before this court and the insolvency court. The court, believing that the most reasonable conclusion from this state of the evidence to be that Morrill took the title to these goods without paying for them, so finds.

" These cigars were stored in a storehouse on State Street by Oliver in the name of Morrill and insured in Morrill's name. They were not all sold until more than a year later.

" The court further finds upon Morrill's statement of the whole transaction, taken together with the finding that the goods were not paid for, and upon the other findings and evidence in the case, that Morrill took the title to these cigars to assist Oliver in carrying out his part of said conspiracy.

" It further appeared that Oliver has been paying a part if not the whole of the expenses of defending this suit."

These findings, if warranted by the evidence, dispose of all the questions raised by the refusal of requests for rulings. Many of

the requests were for findings of fact, to the refusal of which no exception lies. Many others became entirely inapplicable to the case by reason of the findings. Others, that were not inapplicable to some phases of the case, were entirely immaterial, in view of findings upon other parts of the evidence.

The argument of the defendant upon these requests is chiefly that certain of the findings were not warranted by the evidence. All of the argument as to the inability of the plaintiff to recover for the individual property of Hathaway that passed to his assignee in Bristol County is answered by the finding that the property in question belonged to the partnership. The finding in regard to the alleged conspiracy shows that Davis and Hathaway were acting as copartners in the conspiracy, and that their purpose was to keep goods bought in Hathaway's name away from the creditors of Davis and Hathaway, and from coming into the possession of the assignee in insolvency of Davis and Hathaway, to whom they properly would belong. This finding was warranted by the evidence. Besides the matters set out by the judge in his findings, we have the finding in the report of the auditor that there was a partnership between Davis and Hathaway, and that the plaintiff in this action is entitled to recover for these goods from this defendant. Taking the report of the auditor in all its parts, in connection with the other evidence in the case, there was nothing that precluded the judge from considering his findings as evidence for the plaintiff against this defendant.

There is abundant evidence in the case that Davis and Hathaway were partners. Not only did the auditor so find, but there were important circumstances in their conduct relating to the notes, purchases, inventories and sales that point in the same direction. The same is true of the finding that these goods were partnership property. The argument of the defendant's counsel to the contrary rests mainly upon the testimony of the alleged fraudulent conspirators.

It is contended that the auditor's report in the other two cases, brought by the same plaintiff against other defendants for alleged frauds in the disposition of property of the same estate, should not have been considered. The three cases were tried together before the auditor, and were considered by him at the same time. In the reports in the other two cases, there were cer-

tain general findings which are applicable to the present case. These reports were put in evidence without objection, and no question was raised at the trial in regard to their competency, or their effect as evidence. It is too late to raise such a question now. If competent for consideration, they naturally would have some probative force. Evidence that is incompetent, if before the court without objection, may be considered by the tribunal of fact in support of the facts that it tends to establish. *Walkup* v. *Pickering*, 176 Mass. 174. *Doon* v. *Felton*, 203 Mass. 267, 272. *Turner* v. *Williams*, 202 Mass. 500, 503.

The judge was not bound to rule, as matter of law, as to the effect of certain parts of the auditor's report, considered apart from other portions of the report with which they were connected, and thereby to control and set aside the general evidence of the auditor in favor of the plaintiff. There was no such manifest error of law on the face of the report as to call for a ruling at the trial.

The testimony of the auditor, giving the testimony of a deceased witness as it was heard at the trial before the auditor, was competent. The principal criticism upon it is that the auditor was unable to remember it, except by using his notes. But he said that he knew that his notes were accurate, and that what appeared there was what the witness said before him. See *Holden* v. *Prudential Ins. Co.* 191 Mass. 153, 158; *Mayberry* v. *Holbrook*, 182 Mass. 463. The statement that the notes were accurate fairly included the fact that the notes showed everything that the witness said upon any material matter. Great strictness is required, under our decisions, in proving the testimony of a deceased witness, given at a former trial. The party must go beyond what is required in proving an ordinary conversation, where testimony of the substance of the conversation is enough. There must be a close approach to verbal accuracy in giving the substance of the language used. The rule in this State was established many years ago in *Commonwealth* v. *Richards*, 18 Pick. 434. It was expounded and reaffirmed by a majority of the court in *Warren* v. *Nichols*, 6 Met. 261, and has been applied repeatedly in later cases. It was established when the rules of evidence were far more strict and narrow than they are to-day. The policy of the law, in regard to the admission

of declarations, has been materially modified by our statutes permitting the introduction of the declarations of deceased persons generally, if they were made in good faith, and before the commencement of the action on trial. R. L. c. 175, § 66. The wisdom of holding the rule so strictly has been denied or doubted by many eminent judges from the beginning, and there is a reason for applying it with more liberality than formerly. In the latest case in which it was discussed (*Costigan* v. *Lunt*, 127 Mass. 354), decided more than thirty years ago, it was re-affirmed, but applied far more liberally than the language of the early cases would seem to permit. The witness who testified in that case had taken down the testimony of the deceased witness at the former trial, "so far and as fast as he could, not taking some parts of it, but all he considered material." He said that "he could not testify word for word what Jackson said, but he would give the substance of the words." He "was permitted to testify, . . . that Jackson's words were substantially these," etc. This testimony was held competent. The judge who gave the opinion said: "We do not understand this rule to require the *ipsissima verba* of the former witness to be reproduced. He may have testified, speaking in the first person, and his testimony may be repeated as if he spoke in the third person." We think this decision, especially when considered in connection with the statutes enacted in recent years upon kindred subjects, justified the admission of this testimony in the present case.

Witnesses who testified by deposition to sales of cigars in Pennsylvania, shortly before the insolvency, were asked to give their fair market value. Their answers were objected to on the ground that the questions did not refer to the place in reference to which the value was to be given. The witnesses testified generally, without intimating that there was any difference in the market value of cigars between Pennsylvania and Boston. We find nothing in any part of the case to indicate that there was any such difference. Much less is there anything to show in which place the price was the higher, if there was a difference. If we assume that the witnesses were testifying to the price in Pennsylvania, without reference to whether it was or was not any different in Boston, the whole strength of the exception rests upon an assumption that there was such a material

difference in values between the two places that the price in one place could not be given as indicating value in the other. To sustain the exception the defendant must go further, and show, at least by way of inference, that the difference was such that the testimony was prejudicial to him, upon the theory on which the case was tried. We are of opinion that there is no presumption of fact that articles like cigars, sold in large quantities, differ materially in value in Massachusetts and Pennsylvania. The court cannot assume that testimony of the value of the cigars, in response to an inquiry not directed in terms to any particular market, was prejudicial to the defendant, especially in the absence of evidence that there was any material difference between the price of such goods in Boston and the price in Pennsylvania. Without intimating that the evidence could not properly be received, in the discretion of the trial judge, we think the defendant has failed to show that he was harmed by the admission of it. See *Eaton* v. *Mellus*, 7 Gray, 566, 579, 580; *White Sewing Machine Co.* v. *Phenix Nerve Beverage Co.* 188 Mass. 407.

*Exceptions overruled.*