COMMONWEALTH *vs.* JAMES M. GLASSMAN.

Suffolk.    March 24, 1925. — June 1, 1925.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Practice, Criminal,* Variance, Charge to jury, Whether issue for judge or for jury, Failure of defendant to produce evidence. *Larceny. Bucket Shop. Evidence,* Testimony of witness deceased since former trial, Absence of evidence.

At the trial of a complaint for larceny in seven counts, each count alleging a separate offence on a date different from the others, counsel for the defendant agreed that the several counts might be treated as one count and the jury return a general verdict of guilty or not guilty on the whole case without passing upon each count; and this was done. At the close of the evidence, the defendant asked for a ruling that he was entitled to a verdict of acquittal on the ground of a material variance in the dates set forth in the complaint and the proof adduced at the trial. The request was refused. *Held,* that time was not an essential

element of the offence charged in any one of the seven counts of the complaint, and that it was not required to be proved as alleged.

With the complaint above described was tried another complaint charging the defendant with keeping a bucket shop in violation of G. L. c. 271, § 36. There was evidence tending to show that the defendant was a stockbroker; that a customer of his at various times paid him sums of money to purchase specific stock on a "margin basis" and for "his buying and the holding of it"; that acknowledgments in writing were given by the defendant to the customer, stating in substance that the defendant had bought the stock for the customer; and that the defendant did not purchase the stock. *Held*, that

(1) If the jury found that such facts were proved beyond a reasonable doubt, a finding that the defendant was guilty of larceny under G. L. c. 266, §§ 30, 56, was warranted;

(2) A finding that the defendant was guilty of keeping a bucket shop in violation of G. L. c. 271, § 36, was warranted.

At the trial together of the two complaints above described, the judge in his charge to the jury, in defining the crime of keeping a bucket shop, after quoting the definition given in the statute, stated: "Now, we have a lengthy definition of what a bucket shop is, but for the purposes of this case I am going to say to you that if you find that this defendant kept, managed or operated, or assisted in the keeping, operating or management of a shop, store or office in which he took orders to buy or sell stock on the stock exchange but didn't in fact do that, didn't make a *bona fide* purchase of stock in accordance with the order which he received, then he keeps a bucket shop within the meaning of the statute." *Held*, that the charge was accurate and adequate without a statement of all circumstances which would establish the crime within the comprehensive definition of the statute.

It is a well established rule in both civil and criminal cases that evidence of what a deceased person testified at a former trial is competent in any subsequent trial of the same issue between the same parties or their privies provided the former testimony can be substantially reproduced in all material particulars. Per PIERCE, J.

At the trial of a criminal complaint on appeal to the Superior Court, it appeared that a witness, who had testified for the Commonwealth in the lower court, had died, and a witness for the Commonwealth was asked to state what the deceased witness had testified at the previous trial. All questions on the subject were admitted subject to exceptions by the defendant. In answer to questions asked by the trial judge and by counsel, the witness stated that he could give that testimony in what he believed to be "the exact words" of the deceased witness, and, at another time, could "give the testimony or substance of all the testimony." After testifying as to such previous testimony, he further testified that he had given the "substance of all his [the deceased witness's] testimony." There was no formal determination by the trial judge as to the ability of the witness to reproduce the testimony of the deceased witness. In his charge, the judge instructed the jury in substance that unless they were satisfied that the witness had given all the substantial facts that the deceased witness had testified to in the lower court, they should not consider the testimony. *Held*, that

(1) On the record, the judge, when he admitted the testimony of the witness, must be held to have found that the witness could reproduce the testimony of the deceased witness in every substantial, material particular, and that he made his ruling upon the fact so found;

(2) There was no error of law in admitting this testimony as substantially a reproduction of the material testimony of the deceased witness in the court below;

(3) The defendant was not harmed by the submission to the jury of the question of fact, with proper instructions, which the law required to be decided by the court as preliminary to the admission of evidence.

On the evidence at the trial above described, there was no error in leaving it to the jury to determine whether the defendant could and should have produced witnesses whose testimony would prove an actual purchase of the stock, or offered an explanation of incriminating circumstance.

Two COMPLAINTS, received and sworn to in the Municipal Court of the City of Boston on August 6, 1923, the first charging the defendant with the keeping of a bucket shop in Boston and the second, in seven counts, charging larceny. Each count alleged a separate offence on a date different from the others.

On appeal to the Superior Court, the complaints were tried, in the circumstances described in the opinion, before *Flynn, J.*

The substance of the record as to the testimony of the witness Pennycuick relating to the testimony of the witness O'Mealey in the Municipal Court was as follows: Pennycuick was asked by the Commonwealth's attorney if he had heard O'Mealey testify in the lower court, and answered that he did. He then was asked if he remembered his testimony, and, after objection and exception by the defendant, answered, "I do." The trial judge then stated to the defendant's counsel, "You need not object to each question. I will save your exception to this line of inquiry." The witness then was asked by the Commonwealth's attorney, "Can you do it in the very words of the examiner and the witness?" and answered, "As nearly as possible." The trial judge then asked, "Can you do it in the exact words?" and the Commonwealth's attorney asked, "When you say you cannot give the exact words, can you give what you believe to be the exact words?" and the witness answered, "Yes, sir." The judge then stated, "I will exclude his testimony, I won't take it at this time."

There then followed the cross-examination of the witness on other matters. The Commonwealth's attorney then resumed examination in redirect, all subject to the defendant's exception. The judge stated, "All of the testimony of the decedent witness, John W. O'Mealey, is admitted subject to the exception of the defendant." In the course of the inquiry of the witness as to what O'Mealey testified, the trial judge asked, "Can you give us the testimony or the substance of all the testimony?" and the witness answered, "Yes, sir," and in response to questions by the Commonwealth's attorney gave what purported to be the substance of all the testimony of O'Mealey in the lower court. In recross-examination, the witness was asked, "And you consider what you just said as being in substance part of what Mr. O'Mealey said was said to Mr. Casey and Mr. Nayor in the lower court?" and answered, "He said a little more than that. I didn't finish my testimony there of what he said." The judge then interposed, "You are asked to give his whole testimony. Now give it." After further testimony, the following questions and answers occurred: "THE COURT. That is the whole of O'Mealey's testimony, is it? THE WITNESS. That is as much as I can remember.— THE COURT. You say that is the substance of it? THE WITNESS. About; what I can remember. — THE COURT. Of all his testimony? THE WITNESS. I beg your pardon. And then he asked him about certain stocks, whether they could be bought on the Boston or New York Stock Exchange, and Mr. O'Mealey testified that there were at times New York stock sold on the Boston Stock Exchange, which is a fact.— THE COMMONWEALTH'S COUNSEL. Now, to go back to this examination of Mr. O'Mealey. Have you now testified to all you heard Mr. O'Mealey testify in the lower court? THE WITNESS. That is all I can remember.— THE COURT. It is not a question of whether it is all you can remember, but do you say that is the substance of all his testimony? THE WITNESS. That is the substance of all his testimony.— THE COMMONWEALTH'S COUNSEL. You say you don't remember whether or not Mr. Nayor crossexamined him? THE WITNESS. I don't remember that." The witness thereafter

testified that he remembered that Mr. Nayor did cross-examine, and stated the substance of the cross-examination.

In his charge to the jury, the judge in substance stated: "Now, it sometimes happens as it happens in this case, that in the second hearing, or trial, a witness has passed away, a witness whom the parties in a criminal case believe to be important. In such a case at law, as I understand it, is that the testimony can be given after the death of the witness only when it appears that the testimony given by the deceased was under oath in a proceeding in court where the defendant had a full and complete opportunity to cross-examine the witness, and where the person testifying at the second hearing, after the decease of the witness can give his testimony substantially in all material particulars, and unless the witness can so give the testimony of the deceased witness it is not competent against the defendant. Now, you have here through the evidence of Mr. Pennycuick, what he says, as I understand his testimony, and you are to say finally, what he says is the substance of O'Mealey's testimony in all material particulars; and you have here the testimony of Mr. Nayor, if that is his name, as to what Mr. O'Mealey testified to, from which it may appear, I don't say that it does, it might appear that the testimony of Pennycuick as to what O'Mealey testified to in the lower court was not substantially in substance all the material particulars of O'Mealey's testimony. If you find what Pennycuick gave you as the testimony of O'Mealey wasn't in substance all the material things that O'Mealey testified to then you disregard that portion of his testimony."

On the question of what constituted a bucket shop, the judge charged the jury: "Now, in the other case, for keeping a bucket shop, that complaint is drawn under a specific statute which defines what a bucket shop is and what a keeper is and what the offence of bucketing is. A bucket shop is 'any room, office, store, building or place where any contract prohibited by the following section is made or offered to be made.' A keeper of a bucket shop is 'any person owning, keeping, managing, operating or promoting a bucket shop, or assisting to keep, manage, operate or promote

a bucket shop.' Now, we have a lengthy definition of what a bucket shop is, but for the purposes of this case I am going to say to you that if you find that this defendant kept, managed or operated, or assisted in the keeping, operating or management of a shop, store or office in which he took orders to buy or sell stock on the stock exchange but didn't in fact do that, he didn't make a *bona fide* purchase of stock in accordance with the order which he received, then he keeps a bucket shop within the meaning of the statute."

Other material findings and the substance of requests by the defendant for rulings refused by the judge are described in the opinion. The defendant was found guilty on both complaints. The bill of exceptions states: "The defendant excepted to that portion of the judge's charge — that the jury might disregard the evidence of Pennycuick as to what O'Mealey said in the court below, as not being a question of fact, but it was for the court to determine whether it should be admitted or not — as a matter of law. The defendant excepted to that portion of the judge's charge that unless the evidence of Pennycuick was established as to what O'Mealey said, to be full and complete in every substantial particular — the jury must disregard it, as the jury cannot determine what was correct and what was left out or forgotten."

*L. R. Eyges,* (*H. N. Nayor & B. Levin* with him,) for the defendant.

*G. Alpert,* Assistant District Attorney, for the Commonwealth.

Pierce, J. On the complaint of one Milo N. Comstock, the defendant, a stockbroker doing business as James M. Glassman and Company, on August 7, 1923, was brought before the Municipal Court of the City of Boston on two complaints, one for keeping a bucket shop in violation of G. L. c. 271, § 36, and the other in seven counts for the larceny of divers sums of money between March 15 and May 24, 1923, the property of the complainant. After trial and conviction upon each complaint the defendant appealed to the Superior Court. At the trial in the Superior Court counsel for the defendant agreed that the several counts in the com-

plaint for larceny might be treated as one count, and the jury return a general verdict of guilty or not guilty on the whole case without passing upon each count; and this was done.

The request for a ruling that the defendant was entitled to a verdict of acquittal on the complaints of larceny, on the ground of a material variance in the dates set forth in the complaint and the proof adduced at the trial, was denied rightly. Time was not an essential element of the offence charged in any one of the seven counts of the complaint, and it was not required to be proved as alleged. *Commonwealth* v. *Peretz*, 212 Mass. 253.

The judge could not have ruled rightly, as requested (1) that "upon all the evidence the defendant is entitled to a verdict of acquital upon all the complaints of larceny," or (2) that "upon all the evidence the defendant is entitled to a verdict of acquital upon the complaint of 'keeping a bucket shop' as set forth in section 35 of chapter 271 of the General Laws of Massachusetts."

The evidence warranted the following findings of fact: In March, 1923, the defendant was in business in Boston as a stockbroker. The complainant, Comstock, after a discussion with the defendant, gave him $500 to purchase on a "margin basis" one hundred shares of Mexican Seaboard stock, the $500 being required by the defendant "for his buying and the holding of it" and the balance of the money was to remain on interest. Later, Comstock purchased fifty more shares of Mexican Seaboard stock, giving the defendant $500 on account and receiving a receipt dated March 15, 1923. On the same day he ordered another one hundred shares of Mexican Seaboard, and gave a check, and later received a receipt or confirmation stating in substance that the defendant had bought on the Comstock "account and risk . . . 100 shares of Mexican C . . . from . . . O'Mealey at $17¼" per share. Similar orders were given by Comstock to the defendant for other stocks, and with each order of purchase similar margin deposits were made and similar letters or receipts in confirmation were delivered by the defendant to Comstock, and each stated that the stock bought for Comstock was bought from O'Mealey. The stock market

suffered a sharp decline during the period covered by these transactions, and on May 22, in consequence of a statement of the defendant to the effect that the account was "under water," and his demand for additional margin, Comstock gave the defendant as additional collateral a mortgage note of $1,300 and received a receipt therefor. On May 22, the market having further declined, Comstock gave the defendant the mortgage note, a check for $950, and $50 in cash in consequence of a letter from the defendant stating "Your account is in need of $1,000 additional margin besides the mortgage which you have left for discount. The account at one time today was over $500 under water, and we are not in a position to carry the stock for you unless we have the necessary margin to do it with. Consequently it will be absolutely necessary that you give this matter your immediate attention."

In June, one Pennycuick had a conversation with the defendant in reference to an alleged delay of Comstock in putting up the further margin demanded by the defendant, and Pennycuick then said, "Mr. Comstock has always put up his money like a man and I think he will now"; to this the defendant replied, "You boob and you—— fool; you think if I bought the stocks I could have carried them without a man putting up his money, in a market like this?" To this Pennycuick said "You haven't bought the stocks?" and the defendant replied, "No." Pennycuick then said to the defendant, "That is just what I want you to admit. Give Mr. Comstock back his money." The defendant laughed. Shortly after, Pennycuick went away and came back with Comstock and handed the defendant a letter signed by Comstock, in demand of his money and of the mortgage note. This letter was dated June 6, 1923, but was not delivered until June 29, 1923. In reply, the defendant on June 29, 1923, sent Comstock the letter which follows: "We are in receipt of your communication dated June 6, and delivered by Mr. Pennycuick at 4:30 o'clock Friday, June 29, 1923. We are surprised at the nature of the contents, and in reply we desire to say we are prepared to deliver the securities on payment of balance due. If you will arrange to have your

bank take it up, same will be delivered to them upon confirment of the receipt of such instructions from you." Subsequently, Comstock and Pennycuick went to the office of the defendant and Comstock, in substance, demanded that the defendant should give him the money he had paid or deliver to him three hundred and twenty-five shares of Mexican Seaboard stock and he (Comstock) would say nothing further. The defendant wanted Comstock to let him go ahead and carry the stock. Comstock said, "You have not bought my stock; how are you going to deliver them to me?" and the defendant said, "I am going to deliver them to you through some other house; you can take them up through some other house."

On the above facts, if found to be true within the rule as to reasonable doubt, the jury would be warranted in finding that the defendant had fraudulently converted the money of the complainant to his own use and was guilty of larceny within the provision of G. L. c. 266, § 56, and G. L. c. 266, § 30. *Commonwealth* v. *King*, 202 Mass. 379, 391, 392. Within the same rule that facts must be proved beyond a reasonable doubt, the jury, finding the above facts, could have found the defendant guilty of keeping a bucket shop in violation of G. L. c. 271, § 36.

The contention of the defendant that the issues of larceny and bucket shop keeping were so confused by the charge that the jury could have reached no other conclusion than that the keeping of a bucket shop was a form of larceny, and that they naturally accepted the keeping of a bucket shop as proof of the charge of larceny, is entirely without justification, as a reading of the charge in this regard demonstrates. As applicable to the facts in evidence the definition of the crime of bucket shop keeping given the jury by the judge, while concise and terse, was nevertheless accurate and adequate without a statement of all circumstances which would establish the crime within the comprehensive definition of the statute.

At the trial the government offered and the presiding judge received, against the exception of the defendant, the testimony of the witness Pennycuick, in proof of the testimony of

one O'Mealey in the trial of this complaint in the Municipal
Court, O'Mealey having recently died. The exception to
this evidence saved by the defendant rests upon the conten-
tion that the judge did not observe the rules of law which
governed his determination of the preliminary fact of the
admissibility of the evidence. *Foster* v. *Mackay*, 7 Met.
531, 538. *Ames* v. *New York, New Haven & Hartford Rail-
road*, 221 Mass. 304, 306.

It is a well established rule in both civil and criminal cases
that evidence of what a deceased person testified to at a
former trial is competent in any subsequent trial of the same
issue, between the same parties or their privies, provided
the former testimony can be substantially reproduced in all
material particulars. *Ibanez* v. *Winston*, 222 Mass. 129.
*A. T. Stearns Lumber Co.* v. *Howlett*, 239 Mass. 59, 61. The
record statement of the examination of the witness Penny-
cuick by the judge discloses a declaration by the witness
that he could remember the questions put to, and the answers
given by, O'Mealey; and that he could give what he believed
were the "exact words." The evidence of the witness was
received after an interval devoted to another line of inquiry.
When resumed the witness was further examined by the
judge, the prosecutor, and the defendant's attorney, as to the
extent and accuracy of his recollection of the testimony of
O'Mealey upon direct and cross-examination, and testified
in relation thereto that the testimony he had given was in
substance all the testimony O'Mealey had given in the lower
court. In this state of the evidence we think the judge
when he admitted the testimony of Pennycuick must be
held to have found that the witness could reproduce the
testimony of O'Mealey in every substantial, material partic-
ular, and that he made his ruling upon the fact so found.
See in this connection *Newton Centre Trust Co.* v. *Stuart*,
208 Mass. 221, 225; *Horan* v. *Boston Elevated Railway*, 237
Mass. 245, 247. There was no error of law in admitting
this testimony as substantially a reproduction of the mate-
rial testimony of O'Mealey in the court below. *Foster* v.
*Mackay, supra. Gorton* v. *Hadsell*, 9 Cush. 508, 511.
*Commonwealth* v. *Richards*, 18 Pick. 434. *Yale* v. *Comstock*,

112 Mass. 267. *Costigan* v. *Lunt,* 127 Mass. 354. *Jaquith* v. *Morrill,* 204 Mass. 181, 189, 190. *Ibanez* v. *Winston, supra. Commonwealth* v. *Caruso,* 251 Mass. 362. The defendant was not harmed by the submission to the jury of the question of fact, with proper instructions, which the law required to be decided by the court as preliminary to the admission of evidence. *Commonwealth* v. *Tucker,* 189 Mass. 457, 475.

On the evidence there was no error in leaving to the jury to determine whether the defendant could and should have produced witnesses whose testimony would prove an actual purchase of the stocks, or offered an explanation of incriminating circumstances. *Commonwealth* v. *Johnson,* 199 Mass. 55, 62, 63. *Commonwealth* v. *McCabe,* 163 Mass. 98, 103. *Commonwealth* v. *Finnerty,* 148 Mass. 162, 166.

*Exceptions overruled.*