### DAVID W. TEMPLE *vs.* GEORGE L. PHELPS.

Berkshire. October 17, 1906. — December 31, 1906.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Evidence*, Presumptions and burden of proof, Communications between attorney and client, Testimony at former trial. *Attorney at Law. Mortgage,* Foreclosure. *Real Action.*

Where the case of a plaintiff or demandant depends on proving the breach of the condition of a mortgage by a failure to make payments of money as required by its terms, the burden is on the plaintiff to prove the breach by showing that the payments were not made. Expressions in some of the earlier cases disapproved.

In the trial of a writ of entry where the demandant claims title as the purchaser of the land at a foreclosure sale, and the condition of the mortgage was that the tenant, who was the mortgagor, should pay $70 to his mother in each year during her life, and the tenant relies on the defence that the foreclosure sale was void because there had been no breach of the condition of the mortgage, the burden is on the plaintiff to show that the required annual payments were not made.

Where the case of a plaintiff or demandant depends on proving the breach of the condition of a mortgage of real estate by a failure to make payments of money as required by its terms, whether the production of the mortgage by the plaintiff or demandant is even *prima facie* evidence that the payments have not been made, *quaere.*

The exclusion of confidential communications between an attorney and his client does not extend to a statement made by the attorney to his client of what a witness at a hearing before a master testified to in a matter affecting the client's interests.

In the trial of a writ of entry where the demandant claimed title as the purchaser of the land at a foreclosure sale, and the condition of the mortgage was that the tenant, who was the mortgagor, should pay a certain sum of money to his mother in each year during her life, and the tenant relied on the defence that the foreclosure sale was void because the condition of the mortgage was performed by him, the tenant put in evidence four receipts signed by his mother, who had died before the trial, to show payments of the sums due under the mortgage.

The demandant called as a witness an attorney at law, who had acted for the tenant in another case in which there had been a hearing before a master, and who testified that the tenant's mother testified before the master in that case that she had not been paid the sums due under the mortgage and that the receipts signed by her were fictitious and she had signed them when they were sent to her by her son in order to relieve his mind when he was ill and there was trouble about the mortgage. The witness further testified against the objection of the tenant, that he afterwards had told the tenant what his mother had testified to before the master. The tenant contended that this was a confidential communication between an attorney and his client and so was admitted improperly. *Held,* that the evidence was admitted properly, the statements made by the attorney to his client being a narration of facts testified to at a public hearing and there being nothing private or confidential about the communication.

*Semble,* that the stenographic report of the testimony of a witness at a former trial of the same case who since that trial has become insane will be received in evidence, when the testimony is material to the issues on trial.

WRIT OF ENTRY, dated February 11, 1903, to recover certain lands in Williamstown claimed by the plaintiff as purchaser at a foreclosure sale upon alleged default in the performance of the condition of a mortgage given by the tenant to one Mary E. Phelps, the tenant's mother.

In the Superior Court the case was tried before *Hitchcock,* J. The tenant had filed a plea setting forth several defences but before going to trial the parties entered into the following agreement : " It is agreed that all defences in this action are waived except the one issue raised in the second specification of the defendant's answer, namely : Whether at the time of the foreclosure of the mortgage given by George L. Phelps to Mary E. Phelps, there was a breach of the condition of the mortgage." Upon this agreement and the issue thus raised the case was tried and submitted to the jury.

The demandant offered in evidence the mortgage from the tenant to Mary E. Phelps, and the deed under the power of sale contained in the mortgage. The mortgage deed was dated August 27, 1888, was in the usual form of power of sale mortgages and was given to secure the payment of $70 to Mary E. Phelps, each and every year during the term of her natural life.

This mortgage passed to the demandant by virtue of a decree of the Superior Court at the July sitting in Franklin County in 1895, and was foreclosed on February 17, 1896, by a sale of the premises to the demandant.

The contention of the tenant was that at the time of the fore-

closure there had been no breach of any of the conditions of the mortgage, and he introduced evidence upon this issue, a part of which consisted of four receipts given by Mary E. Phelps to the tenant before the foreclosure and while she still was the holder and owner of the mortgage. The contention of the demandant was that these receipts were without consideration and were but a subterfuge and were not given on the days they were dated.

The tenant introduced in evidence an affidavit made by Mary E. Phelps, dated April 5, 1902, in which among other things she stated that nothing was due on the mortgage at the time of the foreclosure, and also offered evidence of other statements made by Mary E. Phelps, which tended to show there was nothing due on the mortgage at the time of the foreclosure.

It was agreed that Mary E. Phelps died in 1902. The demandant called as a witness Charles E. Hibbard, who testified that he was an attorney at law and at one time was acting for the tenant in another action. The witness said that he was present as counsel for the tenant at the first hearing before H. C. Joyner, Esquire, the master in that case, at which the four receipts above mentioned were produced and placed in evidence by the tenant; that a second hearing of the case was held possibly a year after the first, at which Mary E. Phelps was present and testified that while her son George [the tenant] was sick in the hospital her son Gersham brought to her four papers which he desired her to copy and that the four receipts already referred to were the ones that she made at that time at his request; she said that all four receipts were made by her at one time.

The witness then testified as follows under objection and exception: " Q. Did the old lady make any statement in her testimony before Mr. Joyner as to the conversation with reference to these four papers that was had between herself and Gersham? A. She stated that Gersham asked her to copy and sign these four papers that George might have his mind relieved; that he was in the hospital and there was some trouble over the mortgage and that if he could have these four papers that it would relieve his mind from anxiety and that she told him it was not right, or words to that effect, to do so, but she did it. — Q. Did she tes-

tify before Joyner with reference to any statements she made to Gersham as to what she would do in case this matter came into court? A. She said she told George, I am not sure whether she testified she told Gersham, that she should tell the truth about it if they came into court, but she said that subsequently she went to the hospital to see George and then demanded back these receipts and he refused to give them to her and she told him that it was not right and that if she was ever called into court she should tell the truth, but I wouldn't say she told Gersham at the time she signed them although I have the impression that she did say the same thing to Gersham. But she did testify that she told that to George at the hospital."

The witness testified that Mary E. Phelps also testified that all she had ever received from George either in money or produce was approximately $75. The witness further was permitted to testify subject to the objection and exception of the tenant as follows:

" Q. Did you state to George (the tenant) that his mother had testified? A. I repeatedly told Mr. Phelps just what his mother testified to and I think he came to my office the day following, might have been the afternoon of the hearing. — Q. Was there anybody else present at the time of this first interview you had with Phelps after this hearing? A. I wouldn't be able to state that. — Q. After that time did you have any further conversation with Phelps with reference to this testimony of his mother? A. Why, I can only repeat the answer which I gave you before, that I repeatedly told him what his mother had testified to and discussed the matter with him."

In the course of the trial the tenant offered in evidence a stenographic copy of the testimony of one Lucy Phelps, taken at a former trial of this action, who it was agreed was insane and in the Northampton Insane Asylum. The testimony was excluded subject to the exception of the tenant.

The judge in charging the jury gave the instructions in regard to the burden of proof which are quoted and described in the second paragraph of the opinion, the tenant excepting to this portion of the charge.

The jury returned a verdict for the demandant; and the tenant alleged exceptions.

*C. P. Niles*, for the tenant.

*J. F. Noxon & M. L. Eisner*, for the demandant.

KNOWLTON, C. J.   This is a real action in which the demandant seeks to establish a title to certain land.   He acquired the title through a foreclosure of a mortgage under a power of sale. By agreement of the parties the case was tried before a jury on the single issue, " Whether at the time of the foreclosure of the mortgage given by George L. Phelps to Mary E. Phelps, there was a breach of the condition of the mortgage."   This instrument " was dated August 27, 1888, and was in the usual form of power of sale mortgages and was given to secure the payment of seventy dollars to the said Mary E. Phelps, each and every year during the term of her natural life."   It was foreclosed by a sale of the premises on February 17, 1896.

An important question arises on the charge of the judge in regard to the burden of proof.   He said to the jury : " When the defendant comes in and says that he has paid, or, as in this case, when he comes in and says that he has complied with certain conditions, the compliance of which would prevent the plaintiff from maintaining his action the burden of proof shifts over on to the defendant to establish that particular proposition." He further instructed them that if the tenant satisfied them by a fair preponderance of the evidence that his mother, the mortgagee, had been paid in full all that was due her under the mortgage up to the time of the foreclosure, there was no breach of the condition, and the foreclosure would be void, and the tenant would be entitled to a verdict.   But if the tenant failed to satisfy them of that fact, then there was a breach of the condition, and the demandant.would be entitled to a verdict.   To this part of the charge the tenant excepted.

It is clear that, to establish his title, the burden of proof was on the demandant to show that there was a breach of the condition of the mortgage at the time of the foreclosure; otherwise the attempted foreclosure would be of no effect.   *Rogers* v. *Barnes*, 169 Mass. 179, 184.   *Burke* v. *Burke*, 170 Mass. 499. *New England Ins. Co.* v. *Wing*, 191 Mass. 192.   Strictly and technically this burden did not shift during the trial, even if evidence was introduced which made a *prima facie* case in favor of the demandant.   But when a *prima facie* case is made in favor

of a party at a trial, he is entitled to recover unless affirmative evidence is introduced to meet this *prima facie* case. Where the evidence relied on to meet the *prima facie* case is an independent fact which, if established, controls the case, and, if not established, is of no effect, the result is practically the same as if the original burden of proof changed. Unless the particular fact is established, the *prima facie* case prevails. It fairly may be said, therefore, that the burden is upon the party relying upon the particular fact to prove it. When existing overdue indebtedness is shown a cause of action is proved, and a subsequent payment in discharge of it is a particular fact in avoidance, which must be pleaded and proved in order to meet the claim of liability. In such a case it may well be held that the burden of proof is on the defendant; but if the question is whether there was a failure to pay a debt when it became due, the burden of proof is on the plaintiff who claims the money.' If he produces a promissory note, or other evidence of indebtedness, which ordinarily would be given up if paid at maturity, he thereby makes a *prima facie* case which entitles him to recover unless something is shown to meet it. If evidence is introduced tending to show payment at maturity and this is the only defence, the question logically would seem to be whether, on the whole evidence, the plaintiff shows that the debt remained unpaid after it became due, so that a cause of action accrued.

Where an action is founded upon an alleged breach of a bond or recognizance given to secure the performance of an act, it is distinctly held that the burden of proof is on the plaintiff to show a failure to perform. *Blake* v. *Mahan*, 2 Allen, 75. *Toll* v. *Merriam*, 11 Allen, 395. *Thornton* v. *Adams*, 11 Gray, 391. In the last of these cases the court declined to express an opinion as to whether the rule in regard to the burden of proof would be the same if the instrument was a bond or a mortgage given to secure the payment of money. In principle there is no logical distinction, as to how far the plaintiff should go to show a liability, between a case where the breach consists of a failure to pay a sum of money and one where the breach is a failure to perform any other act. We think it plain that in an action of contract founded on an alleged breach of the condition of a bond to pay money, or of a mortgage to secure the payment of

money, the burden of proof is upon the plaintiff who alleges the breach.

In the case last cited it is said, although the remark is not involved in the decision, that the production of such a bond, like the production of an overdue promissory note, would be *prima facie* evidence of non-fulfilment of the contract. We doubt the correctness of this statement. A bond or mortgage to secure the payment of money is not usually given up by the holder on the performance of the condition. A mortgage is commonly recorded, and possession of the original instrument, either before or after its maturity, is not usually regarded as very important.

In the present case it does not appear whether the mortgage was put in evidence otherwise than by the record of it, or where it was at the time of the foreclosure, or afterwards, nor does it appear whether any note was given, or other promise to pay besides the statement in the condition of the mortgage. It is only in case the failure to pay according to the terms of the mortgage is established by the plaintiff, or *prima facie* evidence of it is introduced, the effect of which he seeks to avoid by proof of a subsequent payment, that the burden is on the defendant to establish the payment.

The contract with a condition, in *Gray* v. *Gardner*, 17 Mass. 188, was treated by the court as different from a bond or recognizance, in regard to the burden of proof. Unless there is such a difference, the decision is inconsistent with *Blake* v. *Mahan*, 2 Allen, 75, *Toll* v. *Merriam*, 11 Allen, 395, and *Thornton* v. *Adams*, 11 Gray, 391. If there is not such a difference, these cases should be treated as overruling the earlier one. The *per curiam* opinion in *McGregory* v. *Prescott*, 5 Cush. 67, contains language at variance with the true rule, when the only question is whether there was a failure to pay at maturity. The facts stated show that the decision of the case was correct. This language is made the foundation of a similar statement in *Jewett* v. *Draper*, 6 Allen, 434, which is also objectionable. See 16 Encyc. of Pl. & Pr. 167, 170, 172, 178, and cases cited in the notes. We are of opinion that the instructions upon the burden of proof in the present case were inaccurate.

The tenant excepted to the admission of the testimony of Mr. Hibbard as to what he told the tenant in regard to the testimony

of his mother, at a hearing before a master, at which the tenant was not present. This was objected to as a confidential communication between an attorney and his client. We are of opinion that the evidence was properly admitted, and that there was nothing of a private or confidential nature in it. In *Foster* v. *Hall*, 12 Pick, 89, 98, 99, the court says : " The privilege does not extend to matters not communicated by his client as confidential, but facts known of his own knowledge ; . . . and so of other collateral facts, not confidentially communicated." See *Hatton* v. *Robinson*, 14 Pick. 416, 422 ; *Day* v. *Moore*, 13 Gray, 522 ; *Commonwealth* v. *Bacon*, 135 Mass. 521 ; *Brandt* v. *Klein*, 17 Johns. 335 ; *Levers* v. *Van Buskirk*, 4 Penn. St. 309, 316 ; *Hager* v. *Shindler*, 29 Cal. 47 ; *Alden* v. *Goddard*, 73 Maine, 345, 348 ; *Snow* v. *Gould*, 74 Maine, 540, 543 ; *Aultman* v. *Ritter*, 81 Wis. 395, 398. All the statements made by Mr. Hibbard to his client were of facts testified to in a public hearing, and no testimony was given of anything of a confidential nature said by either of them.

The bill of exceptions does not show that the stenographic copy of the testimony of Lucy Phelps, taken at a former trial, contained anything material to the present case. The exception to the ruling must be overruled because it does not appear that the tenant was injured by it. If, upon another trial, it should appear that the testimony is material, we are of opinion that it should be received. In most courts such evidence is admitted. See 1 Greenl. Ev. (16th ed.) § 163 g; Wigmore, Ev. § 1408. See also *Le Baron* v. *Crombie*, 14 Mass. 234 ; *Holbrook* v. *Gay*, 6 Cush. 215 ; *Commonwealth* v. *McKenna*, 158 Mass. 207.

*Exceptions sustained.*