COMMONWEALTH vs. HUGO BALDI & another.

SAME vs. SAME.

SAME vs. HUGO BALDI.

SAME vs. BERNARDO MARTINO.

Middlesex.    December 12, 1924. — January 9, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Robbery. Conspiracy. Receiving Stolen Goods. Evidence,* Presumptions and burden of proof, Relevancy and materiality. *Practice, Criminal,* Election, Indictments tried together, Report. *Words,* "Conviction."

At the trial of indictments charging one of two partners engaged in illegal traffic in intoxicating liquors with conspiracy to rob and with robbery, being armed, the evidence tended, in substance, to show that the defendant, after spending part of an afternoon with his partner, by appointment met a seller of intoxicating liquors and a broker for the seller in Waltham for the purpose of making a sale; that there had been an agreement with the broker that the liquor be delivered in Clinton but, on the day of the meeting, the place of delivery was changed by the defendant to Marlborough; that delivery was ordered by the defendant to be made to a designated person and, when asked on the stand if there was such a person, the defendant said he did not know and admitted that he had made no effort to find him; that the defendant, the broker and the seller with the liquor drove in the seller's car to Marlborough to a certain ice house where the defendant left the party, ostensibly to see about a following automobile; that then the broker and the seller were overpowered, bound, and robbed by other persons; that, the defendant returning, he was bound without being robbed in circumstances warranting an inference that his being bound was a subterfuge; that later a revolver was found near the place where the defendant had stood; that the following day the liquor was found hidden in the cellar of the partner of the defendant and the automobile of the seller was found three quarters of a mile from the partner's house. *Held,* that the evidence warranted verdicts of guilty on both indictments.

With the trial of the indictments above described, the partner of the defendant therein was tried on indictments charging him with conspiracy and with being an accessory to the robbery after the fact and with receiving stolen goods. Besides the evidence above described, it appeared that the defendant denied to the police officers that he had seen his partner the afternoon of the robbery, but evidence warranted a finding that he had been with him. *Held*, that the evidence warranted his conviction.

It was not error for the judge presiding at the trial of the indictments above described to deny motions that the Commonwealth be required to elect at the beginning of the trial upon which indictment it would proceed.

At the trial above described, the seller of the liquor testified for the Commonwealth. On cross-examination he was asked if he saw anything indicating that the principal defendant knew any of the men who robbed the witness and the broker. The evidence was excluded. The only evidence as to the opportunity of the witness to see his assailants tended to show that he had no such opportunity. *Held*, that the action of the judge was within his discretionary power and that no error was shown.

It was proper for the judge, at the trial above described, to exclude a telephone conversation held on the morning after the robbery between a witness for the defendant, who was a partner of the broker, and the defendant who was accused as accessory and of receiving stolen property, where it was asserted by the defendant that the conversation would have tended merely to show that the defendant then said that he knew nothing of the occurrences surrounding the robbery.

At the trial above described, the defendant, to meet a contention by the Commonwealth that the principal defendant received no order to deliver liquor in Marlborough and had made no effort to locate the alleged consignee or to procure his presence at the trial, showed that the defendant for some time after the robbery had been in jail. In response to questions by the district attorney, admitted subject to exceptions by the defendant, the defendant then admitted that he had got out of jail previous to his indictment and over four months before the trial, and that he had not been in jail since. *Held*, that the admission of the question on cross-examination was proper.

The word "conviction" in G. L. c. 278, § 30, is used in two different senses: it may include the judgment of the court following a verdict of guilty or confession of guilt, or may mean a verdict of guilty against the defendant or his confession in open court, without judgment or sentence; and therefore a judge of the Superior Court, presiding at the trial of an indictment, can report the case after a verdict of guilty and before the imposition of sentence.

FOUR INDICTMENTS, found and returned on December 7, 1923, the first (numbered 9919 in the Superior Court) charging Hugo Baldi and Bernardo Martino with conspiring together to assault and rob one Dennis Meehan of certain liquor and money; the second (numbered 9920 in the Supe-

rior Court) charging the defendant Martino with being accessory before the fact of the robbery of Meehan by Baldi; the third (numbered 9921 in the Superior Court) charging that Baldi, being armed with a dangerous weapon, did assault and rob Meehan of $2,900 and twenty-four cases of liquor; and the fourth (numbered 9926 in the Superior Court) charging Martino with receiving the stolen goods.

In the Superior Court, the indictments were tried together before *Fosdick*, J. Before the empanelling of the jury, the defendants moved that the Commonwealth be required to elect upon which of the indictments it would proceed against the defendants. The motions were denied subject to exceptions saved by the defendants.

The indictments then were tried with four others described in the opinion, in which verdicts of not guilty were returned by order of the trial judge at the close of the evidence of the Commonwealth. The witness John F. Gillespie, referred to in the opinion, was called by the defendants and testified that he had been associated in business with Wortham, that up to and before August 13, he had been engaged in arranging for the illegal sale of intoxicating liquors and had had "more or less transactions with the defendant Baldi"; that on the morning of August 14, he had a conversation with the defendant Martino on the telephone. The defendants then offered to prove "that this witness called up the defendant Bernardo Martino on August 14, the day after the occurrences set forth in these indictments, and asked him if he knew of the occurrence and if he knew that Mr. Meehan and Baldi and Mr. Wortham were held in Marlboro, and that Martino said No, that he did not know anything about it, and that Martino asked him to get the details as to which court they were held in, where they were held, and stated that he would go out with him and see what could be done about getting bail as soon as Mr. Gillespie could tell him what the charge was and where they were held." The testimony was excluded and, the defendant Martino being asked regarding the same telephone conversation, it was again excluded, the defendants alleging exceptions to both exclusions.

The defendants moved severally as to each indictment

that verdicts of not guilty be ordered. The motions were denied and verdicts of guilty were returned by the jury. In cases numbered 9920 and 9921 the defendants alleged exceptions.

Each of the defendants having been sentenced under indictments numbered 9920 and 9921 to not more than ten years nor less than five years in State's prison with one day solitary, and the sentences stayed pending the prosecution of their exceptions, the indictments in 9919 and 9926 were placed on file by order of the judge and those cases were reported to this court for determination.

*W. S. Kinney,* for the defendants.

*R. T. Bushnell,* Assistant District Attorney, for the Commonwealth.

CARROLL, J.  The defendant Baldi was found guilty and sentenced on an indictment (numbered 9921) charging him with robbery of Dennis Meehan, being armed. The defendant Martino was found guilty and sentenced on an indictment (numbered 9920) charging him as an accessory before the fact to the robbery of Meehan. These two cases are before us on the defendants' bill of exceptions. On two other indictments (numbered 9919 and 9926) the defendants were found guilty. These indictments were then placed on file by order of the judge. Indictment number 9919, charging the defendants with conspiracy to commit the crime of robbery from Meehan, and indictment number 9926, against Martino for receiving stolen goods, were reported to this court, the evidence in the bill of exceptions being incorporated in the report. These four indictments were tried together with four other indictments, in two of which Baldi was charged with being an accessory after the fact to the murder of John B. Gourard; and in two of which Martino was charged with the same crime. In these four last mentioned indictments, verdicts were ordered for the defendants. Eight cases were tried together. Before the jury was empanelled the defendants moved that the Commonwealth be required to elect upon which of these indictments it would proceed against the defendants. The motion was overruled. The defendants moved at the close of evidence that a verdict

of not guilty be ordered in cases numbered 9919, 9926, 9921 and 9920, which motion was denied, the defendants excepting.

In August, 1923, Baldi arranged with one Wortham to furnish seventy-five cases of Scotch whiskey. Baldi, during the two years previous, had several transactions with Wortham involving the sale of liquor. On the night of August 13, Wortham met Baldi in Watertown and went with him to Waltham, where Meehan, from whom Wortham purchased the liquor, met them. The original agreement was to deliver the whiskey at Clinton, but on August 13 Baldi notified Wortham to deliver it at Marlborough. There was evidence that Meehan met them at Waltham, both Wortham and Baldi accompanied Meehan in a Packard automobile, driven by Meehan, in which machine were twenty-four cases of Scotch whiskey; and that another car was to follow them. Baldi, Wortham and Meehan started for Marlborough, and on the trip the car in the rear was lost track of. On arriving at Marlborough, on the main highway where there was a sign, Baldi directed Meehan to turn into a driveway; he drove in this way about two or three hundred yards to an ice-house, and they were met by two men who directed Meehan to drive to the door of the ice-house, Baldi saying he would return to the main highway and look for the other car. When Meehan came to the door, two men armed with drawn revolvers seized Wortham and tied him with ropes; at the same time three other men overpowered Meehan and bound him. Wortham and Meehan were taken to the ice-house and stood against the wall, Meehan being robbed of $2,900 in cash, a couple of card cases, and a pocket knife, the robbers "leaving at his request some keys and also leaving a diamond ring worth $500, which he was wearing." Wortham was robbed of $3, "being left with a little small change." About five minutes after this robbery, Baldi was brought into the ice-house tied, and placed against the wall, and in a few minutes was placed in a corner diagonally opposite to Meehan and Wortham. The sound of an approaching automobile was heard. Baldi freed himself from his bonds and freed Wortham and Meehan. A flash light was seen, whereupon Baldi said " Tie me up

again; if we are not tied when they come in they will kill us all." When Baldi was arrested, $47 in cash, a wallet and razor were found upon him. After his arrest, a gun was found in the sawdust where Baldi had been taken. The next day the twenty-four cases of Scotch whiskey, which were in Meehan's Packard car, were found in Martino's cellar in Newton covered with automobile robes from Meehan's car and the Packard car belonging to Meehan was found in Newton about three quarters of a mile from Martino's house.

Baldi and Martino were partners in the illegal sale of liquor, although Martino testified that he knew nothing of this particular transaction in question and did not know who put the liquor in his cellar. On cross-examination of Martino, he admitted that he told the police officers that he had not seen Baldi on the afternoon of August 13. There was evidence that Baldi was at Martino's house in Newton on that afternoon; that Martino drove him to a place where Baldi took the car for Watertown, about thirty minutes after five o'clock. The evidence showed that the liquor was to be delivered, according to the original arrangement with Wortham, at Clinton to one John Galbo. On August 13, Baldi directed that the liquor be delivered at Marlborough. When Baldi was asked if there was such a person as Galbo he replied, " I don't know," and also admitted that he had made no effort to find Galbo.

It appeared that the ice-house in question was owned by a company of which John B. Gourard was president. He went to the ice-house on the night of August 13, just before Baldi untied himself. Shots were fired, one of them striking Gourard and as a result of which he died. He did not identify either of the defendants. There was evidence for the jury to justify the verdicts of guilty on the four indictments upon which the jury passed.

The place of delivery was selected by Baldi, it was not known by Wortham or Meehan. Baldi on August 13 directed that the liquor should be delivered at Marlborough although it was supposed it was to go to Galbo at Clinton. When Baldi was tied up, he was taken to a corner diagonally

opposite to Meehan and Wortham and the jury could find that this was done so that Wortham and Meehan could not see him. He alone of the three men was able to untie himself; he requested Meehan and Wortham to tie him again; a gun was found at the spot where Baldi was supposed to be tied. Meehan and Wortham were robbed of nearly everything of value except the ring, which may have been overlooked, while Baldi's funds, consisting of $47, were not taken from him. The stolen liquor was found in his partner's home and nearby the automobile of Meehan's was found. Baldi and his partner were together August 13, and Martino drove Baldi to a place where he could take a car for Watertown. Baldi made no effort to locate Galbo who was supposed to live in Clinton, and was represented to be the purchaser.

Considering all the evidence, the jury could find that Baldi was the principal and prime mover in the scheme by which Wortham and Meehan were to be taken to this place in Marlborough, where Baldi's associates were prepared to meet and rob them of their money and property; that Baldi's being bound and placed in the barn was a mere pretence and a part of the plan to divert suspicion from himself. The existence of the scheme was a question for the jury. Baldi was present when it was put into execution; it could be found that he was acting in conjunction with the robbers and affording them aid; that the weapon found was in his possession. There was evidence therefore that he was the principal in robbing Meehan and was one of the conspirators. *Commonwealth* v. *Lucas*, 2 Allen, 170. *Commonwealth* v. *Clune*, 162 Mass. 206, 214. See *Commonwealth* v. *Reed*, 162 Mass. 215, 218, 219.

There was evidence for the jury of Martino's guilt. The stolen liquor was found in his house the day following the robbery. The automobile was found within a mile of his house. His relations with Baldi, his partnership with him in the illegal sale of liquor, and all the circumstances, were evidence to prove his guilt. His denial that he saw Baldi on the afternoon of August 13, when, in fact, he was at Martino's house and was carried by Martino to the car whence he could go to Watertown, indicated his guilty knowl-

edge. See *Commonwealth* v. *Devaney,* 182 Mass. 33, 36; *Commonwealth* v. *Hartford,* 193 Mass. 464, 469.

The defendants' motion that the Commonwealth be ordered to elect upon which indictment it would proceed was overruled properly. The defendants were not as matter of law entitled to the ruling that the Commonwealth should elect upon which indictment to proceed. The motion does not raise the question whether separate trials should have been ordered. It required the Commonwealth to elect, and we are not called upon to decide whether a motion for separate trials should have been granted. In *Commonwealth* v. *Rosenthal,* 211 Mass. 50, the defendant asked to be tried separately upon each one of the two indictments. This court in overruling the defendant's exception said, at page 52: "Where the essential elements of the conduct which may constitute two distinct crimes are the same and to be proved in large part by the same evidence, and where the indictment might have been drawn legally so as to include both crimes, no right of the defendant secured to him by the law as matter of right is violated by compelling a joint trial of both indictments in the exercise of a sound judicial discretion." *Commonwealth* v. *Seeley,* 167 Mass. 163. The statement in *Pettes* v. *Commonwealth,* 126 Mass. 242, that if the defendant is likely to be prejudiced, the court is authorized to direct the prosecutor to elect upon which count he will proceed, does not conflict with what is here decided. The proper exercise of the court's discretion is not raised by the defendants' request. They claimed that as matter of law the Commonwealth should elect upon which indictment it relied. The court was dealing with a single course of criminal conduct, where the same evidence in substance would be required to prove such crime. There was no error in denying this motion.

On cross-examination Meehan was asked if he saw anything indicating that Baldi knew any of the five men who robbed them. This was excluded and the defendants excepted. Meehan was ordered to go to the door of the ice-house almost immediately on his arrival. Baldi disappeared. Meehan was bound and placed with his face against the wall

so that in the darkness of the night he could see little, if anything, of what was going on. He had little, if any, opportunity to know whether Baldi knew these men. The admission of the evidence was within the discretion of the judge — its exclusion was not error in law.

There was no error in excluding the conversations of Martino with John F. Gillespie on the day following the robbery. They were self-serving declarations and were not within the exceptions to the rule excluding such testimony. The Commonwealth introduced no evidence of conversations with Gillespie; the evidence was not offered to contradict the witness. *Commonwealth* v. *Williams*, 105 Mass. 62, 68. *Commonwealth* v. *King*, 202 Mass. 379, 385. See *Commonwealth* v. *Cosseboom*, 155 Mass. 298.

The contention of the Commonwealth was that Baldi received no order to deliver the liquor at Marlborough, that he made no effort to locate Galbo or secure his presence at court. To meet this contention the defendants showed that he was in jail for four months following August 13 and " didn't see much of anybody after that." The Commonwealth then asked Baldi " And you got out of jail when? A. On December — November, I think." He was then asked if he had been in any jail since and he answered " Never." These questions and answers were excepted to. The Commonwealth could negative the effect of the defendant's evidence of his imprisonment, by showing that he was free to find Galbo since his release, that he had not been in another jail. No reversible error is shown in the admission of this evidence. *Commonwealth* v. *Johnson*, 188 Mass. 382, and cases cited.

What we have said disposes of the defendants' exceptions. We now deal with the report by the presiding judge of indictments numbered 9919 and 9926.

By G. L. c. 278, § 30, in a criminal case in the Superior Court, if the defendant is convicted the judge may report the case if the defendant desires or consents to it. The word " conviction " is used in two different senses: it may include the judgment of the court following a verdict of guilty or confession of guilt, or may mean a verdict of guilty

against the defendant or his confession in open court, without judgment or sentence. *Commonwealth* v. *Gorham*, 99 Mass. 420. *Commonwealth* v. *Lockwood*, 109 Mass. 323. *Munkley* v. *Hoyt*, 179 Mass. 108. Under this statute a judge of the Superior Court can report a case after a verdict of guilty and before sentence is imposed. See *Commonwealth* v. *Carver*, 224 Mass. 42; *Commonwealth* v. *O'Neil*, 233 Mass. 535, 543; *Commonwealth* v. *Cronin*, 245 Mass. 163. After the jury had returned a verdict of guilty in the cases numbered 9919 and 9926, they were placed on file. As to the filing of criminal cases and its effect see *Attorney General* v. *Tufts*, 239 Mass. 458, 537. The questions arising on the report in these cases present the questions already considered in the defendants' bill of exceptions. There was no error of law in the conduct of the trial.

The defendants' exceptions in cases numbered 9920 and 9921 are overruled. And the verdicts in cases numbered 9919 and 9926, and the order of the court placing these cases on file are to stand.

*So ordered.*