COMMONWEALTH *vs.* SAMUEL GALLO.

Suffolk. March 2, 6, 1931. — April 9, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Practice, Criminal,* Trial of indictments together, Arguments of counsel. *Constitutional Law,* Due process of law, Right to meet adverse witnesses face to face. *Evidence,* Testimony at former trial, Declaration of deceased person, Competency, Remoteness. *Witness,* Absent witness. *Statute,* Construction. *Words,* "Suit," "Action."

The trial of an indictment for murder resulted in a verdict of guilty. Subsequently another indictment was returned charging another defendant with the same murder, and the trial thereof also resulted in a verdict of guilty. There was evidence to support the verdict at each trial. A judge of the Superior Court thereafter allowed a motion for a new trial of each indictment and ordered that they be tried together. The first defendant was acquitted and the second defendant was found guilty. Upon an appeal with an assignment of errors by the second defendant, it was *held*, that there was no error of law nor abuse of discretion in the order that the indictments be tried together.

At the first trial of the indictment above described against the second defendant, a witness testified for the Commonwealth, and was cross-examined fully by the defendant, his testimony being taken stenographically. The judge at the second trial heard evidence and found that the Commonwealth had tried industriously to discover the witness and to produce him to testify, and had made diligent search for

him within and without the Commonwealth, without avail, and was unable to call him as a witness; and thereupon ruled that the testimony given by the witness at the first trial might be read to the jury. *Held,* that

(1) There was no error of law in the ruling by the judge;

(2) The ruling did not violate the rights of the defendant under art. 12 of the Declaration of Rights;

(3) Such testimony was not to be excluded at the second trial on the ground that the issue thereat was different from that in the first trial: the issue as to the second defendant was the same at both trials, notwithstanding the circumstance that the second trial was had together with the second trial of the other indictment.

G. L. c. 233, § 65, does not apply to prosecutions for crime.

It further was *held,* upon the appeal with an assignment of errors above described, that

(1) There was no error of which the appellant could complain in allowing the first defendant, who, immediately after his arrest for the murder had told a story touching his own and the appellant's connection with the homicide materially different from his testimony at the second trial, to testify when and to whom he first told the story concerning the murder which he told on the witness stand: the time and conditions when the altered story was first uttered were not immaterial;

(2) Certain evidence offered by the appellant, which did not have any tendency to contradict testimony by the first defendant that he never told anybody at any time that some one other than the appellant committed the murder, and which at most might contradict testimony by another witness that he had never heard any one other than the appellant accused of the crime, rightly was excluded as immaterial;

(3) Evidence, offered by the appellant, that the father of the first defendant had died before the murder was committed, had no tendency in the circumstances to contradict testimony by the first defendant that his brother, dressed in black, visited him in jail after the murder and told him that his father had died in Italy of a broken heart because he was in jail: such evidence was immaterial and remote and properly was excluded;

(4) There was no error in the admission of testimony to the effect that the appellant had ordered cigarettes sent to the first defendant and had employed a lawyer for him: the relations between these two were a part of the circumstances and might have some bearing upon the guilt or innocence of one or both;

(5) The rights of the appellant, as to certain improper references made in the closing arguments to the jury by the district attorney and the attorney for the first defendant, were protected by prompt instructions to the jury by the trial judge that the references should be disregarded.

INDICTMENT, found and returned on January 9, 1929, charging the defendant with murder.

The indictment was tried in the Superior Court before *Cox*, J. The defendant was found guilty. In the circumstances described in the opinion, the judge allowed the defendant's motion for a new trial, and the indictment was tried again with an indictment against one Cero before *W. A. Burns*, J. The defendant was found guilty and filed an appeal with an assignment of errors.

*J. J. Kaplan*, (*V. Garro & J. J. Burns* with him,) for the defendant.

*F. M. J. Sheenan*, Assistant District Attorney, (*D. J. Gillen*, Assistant District Attorney, with him,) for the Commonwealth.

RUGG, C.J. A man named Fantasia was killed on a street in Boston on a June afternoon, 1927, by a shot or shots fired from a pistol. A number of persons were in the vicinity. One Cero, running immediately from the scene of the homicide, was followed and shortly was apprehended. He was indicted, tried and convicted of murder in the first degree in November, 1927. Exceptions taken at that trial were overruled in *Commonwealth* v. *Cero*, 264 Mass. 264. At the time of the homicide Cero was employed by the present defendant and had known him about six weeks. There was testimony from which it might have been found that the defendant provided his personal counsel for the defence of Cero, who at his first trial disclaimed all knowledge of the murder. After the conviction of Cero, the defendant continued his activity in behalf of Cero and assured him that a new trial would be secured. After the sentence of Cero, the defendant attempted to induce, by the payment of money, an important witness for the Commonwealth to change his testimony and to sign an affidavit favorable to Cero for use at the hearing on a motion for a new trial. The defendant was found guilty of contempt of court in that connection and was committed to the same jail in which Cero was awaiting execution. In October, 1928, Cero, in the yard of the jail, stabbed the defendant inflicting serious injuries. Shortly before the time set for the electrocution of Cero, he told to certain public officials a story implicating the defendant in the murder of Fantasia. At about the same time, appeared a woman, who

said that she was an eye witness of the murder and that the defendant and not Cero had fired the fatal shots. The execution of Cero was deferred and the present indictment was found in January, 1929, charging the defendant with the murder of Fantasia. At his trial substantially the same witnesses testified as in the trial against Cero, and in addition Cero and the woman also testified in effect that the defendant had caused the death. A verdict of guilty was returned on March 1, 1929. Thus the defendant and Cero, each alone and independently of the other, were charged with the murder of the same man by separate indictments found at different times, and each had separately been convicted of murder in the first degree by a verdict rendered at a trial in which he alone was the defendant. In this state of affairs both those verdicts were set aside by the one judge who had presided over both trials.

1. The two defendants were then ordered to be tried together on these same indictments. At this second trial Cero was acquitted and the defendant was found guilty of murder in the first degree. The defendant in various forms excepted to this procedure and demanded the right to be tried alone. The validity of such joint trial must be determined primarily in the light of decisions of this court and the principles of criminal procedure established in this Commonwealth.

Each indictment charged the commission of one and the same crime against society, namely, the murder of Fantasia. Both defendants might have been joined in one indictment. If there had been one such indictment charging both defendants with the commission of that single crime, there could have been no objection in law to a single trial against both defendants. In such case, whether there should be separate trials would rest solely in sound judicial discretion. *Commonwealth* v. *Borasky*, 214 Mass. 313, 316, and cases collected. *People* v. *Snyder*, 246 N. Y. 491, 497.

Two distinct crimes may be charged in different counts of the same indictment and tried at one time. *Carlton* v. *Commonwealth*, 5 Met. 532. *Lebowitch* v. *Commonwealth*, 235 Mass. 357, 363. *Commonwealth* v. *Szczepanek*, 235

Mass. 411. *Commonwealth* v. *Slavski*, 245 Mass. 405, 411, and cases cited. *People* v. *Northcott*, 209 Cal. 639; *S. C.* 70 Am. L. R. 806, and cases collected in note. A defendant charged by separate indictments with two distinct crimes arising out of a single chain of circumstances, which might have been joined by several counts in one indictment, may be required to defend both indictments on a joint trial. *Commonwealth* v. *Rosenthal*, 211 Mass. 50. The complaint in *Commonwealth* v. *Miller*, 150 Mass. 69, charged two defendants jointly in two counts with having received stolen goods at different times. At the trial in the District Court one defendant was found guilty on both counts and the other was found guilty on one count and acquitted on the other count. Both defendants appealed. In the Superior Court separate trials were refused, although the result was that on the joint trial one defendant was charged with two distinct offences and the other with only one offence. It was held that there was no error in denying a separate trial to each defendant. In *Commonwealth* v. *Slavski*, 245 Mass. 405, it was held that two separate complaints charging the defendant with disconnected crimes, which did not arise out of a single chain of circumstances but which might have been joined by separate counts in a single complaint, might be tried together. This conclusion was reached after a review of decisions and resulted in overruling *Commonwealth* v. *Bickum*, 153 Mass. 386, on that point. In *Commonwealth* v. *Baldi*, 250 Mass. 528, four separate indictments were tried together, one against B and M charging conspiracy to assault and rob X, another charging M with being accessory before the fact of robbery of X by B, the third charging B with assault and robbery from X, and the fourth charging M with receiving the stolen goods. Upon all these indictments verdicts of guilty were returned. Four other separate indictments were tried at the same time against the same defendants, in which on the merits verdicts were directed in favor of the defendants. A motion was presented that the Commonwealth be ordered to elect upon which indictment to proceed. In holding that there was no error in the denial of that motion, it was said at page 535:

"The court was dealing with a single course of criminal conduct, where the same evidence . . . would be required to prove" the crimes charged. While the exact question there decided was not the same as that here raised, it was a close approach to it. In *Commonwealth* v. *Seeley*, 167 Mass. 163, it was held that two persons indicted separately, each for adultery with the other, might be tried together against the objection of the defendants. It is hardly possible to state a sound distinction between that case and the case at bar on that point.

It seems to us to follow necessarily from these decisions that there was no error in law in the order that the two indictments, the one against Cero and the other against the defendant, be tried together. It is manifest that both defendants might have been joined in one indictment and tried together. There was but one murder. The contention of the Commonwealth at the trial was that both defendants were guilty as charged. There was evidence to support that contention. That issue was argued to the jury. It was submitted to the jury by the charge of the presiding judge. So far as concerns essentials in the ascertainment of truth and the administration of justice, a joint trial of two defendants on two separate indictments for one crime differs in no respect from a single trial of the same defendants joined in one indictment for the identical crime. Doubtless, after all the evidence produced in behalf of the Commonwealth had been discovered, a joint indictment might have been presented. But the reason for separate indictments found at different times appears to have been ample.

The tendency in recent years, both of legislative enactment and of judicial decision, has been away from formalities in the conduct of criminal trials which have no relation to the essentials of a prompt and fair trial upon defined issues. Criminal pleading has been much simplified and its rigors have been relaxed by statute. Verbiage formerly regarded as necessary to the validity of an indictment has been eliminated. Variance between allegation and proof is no longer as fatal to the possibility of convic-

tion as formerly. *Commonwealth* v. *Gedzium,* 259 Mass. 453, 459, and cases cited. *Commonwealth* v. *Snow,* 269 Mass. 598, 600, 601. While there can be no impairment of constitutional guaranties, defendants charged with crime have no vested rights in matters merely procedural, bearing no vital connection with a real defence, fairly presented, based upon the merits. Traditional tenderness for persons accused of crime, having its origin in governmental, social and legal conditions far different from those now prevalent, cannot stand in the way of expeditious ascertainment of the facts, provided every substantial right of defendants be sedulously safeguarded. There seems to us no difference in sound principle under present conditions between requiring one defendant to proceed to a single trial upon several indictments charging different crimes, and requiring two defendants to proceed to a single trial upon separate indictments charging the same offence. Compare *Lumiansky* v. *Tessier,* 213 Mass. 182, 188–189; *Salinger* v. *Loisel,* 265 U. S. 224, 229, 230. We are therefore of opinion that there was no error in the joint trial of the two defendants.

The case at bar is distinguishable from cases like *McElroy* v. *United States,* 164 U. S. 76, *Zedd* v. *United States,* 11 Fed. Rep. (2d) 96, and *De Luca* v. *United States,* 299 Fed. Rep. 741, 743. See *Williams* v. *United States,* 168 U. S. 382, 391. The Federal statute having covered the field of consolidation of criminal trials, the common law became no longer operative. *School Committee of Lowell* v. *Mayor of Lowell,* 265 Mass. 353, 356, 357, and cases collected.

In *Rex* v. *Crane,* [1920] 3 K. B. 236, it was held by the Earl of Reading, C.J., speaking for the Court of Criminal Appeal, that the trial together of two prisoners separately indicted, one for receiving and the other for stealing certain skins, was a nullity. On appeal *sub nomine, Crane* v. *Director of Public Prosecutions,* [1921] 2 A. C. 299, 319, 320, 321, 331, 335, 336, the decision on this point was affirmed. Those decisions were followed in *Rex* v. *Dennis,* [1924] 1 K. B. 867, where a joint trial of two defendants separately indicted, one "for using" and the other "for having opened,

kept or used" a house for a forbidden purpose, was held
to be beyond the jurisdiction of the trial court.   Those
decisions may be distinguished from the case at bar on the
ground that those were joint trials of different defendants
separately indicted for distinct crimes, while in the case at
bar each defendant was indicted for one and the same
crime.   The ground upon which those decisions are made
to rest, although not much amplified, may be thought to
be inconsistent with the conclusion here reached.   If that
be so, those decisions are incompatible with *Commonwealth*
v. *Seeley,* 167 Mass. 163, *Commonwealth* v. *Baldi,* 250 Mass.
528, and *Commonwealth* v. *Slavski,* 245 Mass. 405.   Few
decisions in this country bearing on the point have come
to our attention, and those are not by the highest courts.
In none of them is there much discussion, but they do not
appear to support the view we entertain.   *People* v. *O'Connor,*
81 Cal. App. 506, 515, 519.   *Taylor* v. *State,* 20 Ala. App.
133, 134.   There is nothing contrary to the conclusion here
reached in *State* v. *Devlin,* 25 Mo. 174, 176.   The weight of all
those decisions having a possibly contrary aspect is not
minimized.   We are constrained not to follow them because
they are not in harmony with the principles underlying our
system of criminal procedure as disclosed in the decisions of
this court already cited.

2. The defendant has somewhat faintly argued that this
procedure has violated his right to due process of law secured
under the Fourteenth Amendment to the Constitution of the
United States.   In our opinion there is no merit in that con-
tention.   The defendant was not charged with crime under
the laws of the United States.   He was indicted for a crime
against the good order and under the laws of this Common-
wealth.   He has been accorded a fair trial under the law
established in this jurisdiction.   "The words due process of
law 'were intended to secure the individual from the arbi-
trary exercise of the powers of government, unrestrained by
the established principles of private rights and distributive
justice.'"   *Twining* v. *New Jersey,* 211 U. S. 78, 101.   *Duane*
v. *Merchants Legal Stamp Co.* 231 Mass. 113, 125–128; writ
of certiorari denied, 249 U. S. 613.   We can add nothing to

the discussion contained in those two decisions which are in our opinion decisive against this contention of the defendant. To the same effect are *Missouri* v. *North,* 271 U. S. 40, 42, and *Hebert* v. *Louisiana,* 272 U. S. 312, 316, 317. There appears to us to be nothing at variance in *Thompson* v. *Utah,* 170 U. S. 343, or in *Jordan* v. *Massachusetts,* 225 U. S. 167.

3. There was no abuse of discretion in denying to the defendant a trial separate from that of Cero. As we view the trial upon the report of the evidence, there was a very real issue whether both Cero and the defendant were guilty. There appears to have been evidence sufficient to support a verdict of guilty against both. Although the testimony of Cero was hostile to the defendant, there were many circumstances tending to discredit its weight. Whether in such circumstances there ought to be separate trials rested in the sound judicial discretion of the trial judge. It has recently been said in *Langnes* v. *Green,* 282 U. S. 531, at page 541: "The term 'discretion' denotes the absence of a hard and fast rule. *The Styria* v. *Morgan,* 186 U. S. 1, 9. When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." This is the rule of our decisions. *Davis* v. *Boston Elevated Railway,* 235 Mass. 482, 496, 497. Tested by this rule, there is no reason to reverse the decision of the trial judge on this point. *Commonwealth* v. *James,* 99 Mass. 438. *Commonwealth* v. *Robinson,* 1 Gray, 555, 560.

4. At the first trial of the defendant on this indictment, a woman called as a witness gave testimony to the effect that she saw the defendant fire the shots which resulted in the death of Fantasia. She had been cross-examined fully in behalf of the defendant. Her testimony was taken stenographically, so that it could be reproduced word for word. It was offered against the defendant at the second trial, now under review, on the ground that the witness had disappeared and could not be produced to testify in person. The trial

judge heard evidence and found as facts that the Commonwealth had industriously tried to discover that witness and produce her to testify, and had made diligent search within and without the Commonwealth at places she had been known to frequent, and had interviewed numerous persons who knew her and might throw light on her whereabouts, without avail, and was unable to call her as a witness. These findings are amply supported by the testimony presented and must stand. *Commonwealth* v. *Russ,* 232 Mass. 58, 69. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143. There was no error of law in the conduct of the hearing before the judge which resulted in these findings. In a hearing of this nature before the judge alone, the very point at issue may depend in part upon inquiries made and answers received by the witness in the course of his investigations. That is the original and primary evidence upon the point at issue. Although this has some superficial resemblance to hearsay, it is admissible. *Wyatt* v. *Bateman,* 7 C. & P. 586. *Burt* v. *Walker,* 4 B. & Ald. 697. *Austin* v. *Rumsey,* 2 C. & K. 736. *Vaughan* v. *State,* 58 Ark. 353, 377. See *Hubbard* v. *Allyn,* 200 Mass. 166, 174. Upon these findings the ruling was made that the testimony given at the first trial might be read to the jury at the trial here under review.

The contention of the defendant is that this ruling was in violation of his rights under art. 12 of the Declaration of Rights to the effect that "every subject shall have a right . . . to meet the witnesses against him face to face." In holding that testimony given at an earlier trial of an indictment by a witness since deceased might be read at a second trial, it was said concerning those words of the Constitution in *Commonwealth* v. *Richards,* 18 Pick. 434, at page 437: "That provision was made to exclude any evidence by deposition, which could be given orally in the presence of the accused, but was not intended to affect the question as to what was or was not competent evidence to be given face to face according to the settled rules of the common law." Evidence of this nature has been repeatedly held admissible in the case of a deceased witness. *Commonwealth* v. *Goddard,* 14 Gray, 402. *Commonwealth* v. *Caruso,* 251 Mass.

362, 366, 367. *Commonwealth* v. *Glassman,* 253 Mass. 65, 73, 74. Respecting the similar provision in art. 6 of the Amendments to the Constitution of the United States, it was said in *Dowdell* v. *United States,* 221 U. S. 325, 330: "It was intended to prevent the conviction of the accused upon depositions or *ex parte* affidavits, and particularly to preserve the right of the accused to test the recollection of the witness in the exercise of the right of cross-examination." In *Commonwealth* v. *McKenna,* 158 Mass. 207, evidence was offered as to testimony given at a former trial of the same complaint by a resident witness, who at the second trial was ill and unable to appear in court. In holding the evidence to have been rightly excluded, it was said at page 210: "On this question there is a conflict of authority in other jurisdictions, but here, so far as we know, the practice has been to confine such testimony to cases where the witness has died." This statement of practice was too narrow in its implications because it had been held in *Holbrook* v. *Gay,* 6 Cush. 215, that books of account kept by one who had since become insane might be received in evidence to prove charges appropriately the subject of book charge, as well as such books kept by one who had since deceased. In *Temple* v. *Phelps,* 193 Mass. 297, it was said that a stenographic copy of material testimony given at a former trial of the same case by a witness who had since become insane was admissible in evidence. In *Ibanez* v. *Winston,* 222 Mass. 129, it was said at page 130 that the rule touching the reproduction at a second trial of testimony given at a former trial of the same case by a witness since deceased or insane "in both civil and criminal cases is the same. The reason for the admission of such testimony is founded upon necessity and has for its end the attainment of substantial justice." The offered evidence in that case was held to have been rightly excluded because no sufficient foundation was laid for its admission. The meaning of this clause of art. 12 of the Declaration of Rights was discussed at some length in *Commonwealth* v. *Slavski,* 245 Mass. 405. It was there pointed out with considerable review of cases that the principle declared in *Commonwealth* v. *Richards,* 18

Pick. 434, at page 437, and already quoted, permitted the admission of kinds of evidence not thought of at the time of the adoption of the Constitution if falling within the settled rules of the common law. Dying declarations, admissible at early common law on the trial of indictments for homicide, have been extended to include such declarations on the trial of indictments for procuring abortion. The range of public documents admissible on criminal trials has been enlarged by statute.

This review of our own cases demonstrates that the precise question here presented has not hitherto arisen for decision. The most that has been held is that material testimony given by a witness at a prior trial of an indictment may be reproduced at a second trial upon the same indictment, provided the witness since the earlier trial has died or become insane.

In this situation resort naturally is had to the common law of England as declared prior to or nearly contemporaneously with the adoption of the Constitution. It was said in a decision by the Chief Justice of England and two associate justices, about 1623, that if a "party cannot find a Witnesse, then he is as it were dead unto him; And his Deposition in an English Court in a Cause betwixt the same parties . . . may be allowed to be read to the Jury." *Anonymous,* Godb. 326, 327. To the same effect in substance are *Oates's Trial,* 10 How. St. Tr. 1227, 1285, 1286, decided in 1685; *Altham* v. *Anglesey,* Gilb. 16, decided about 1710; and *Fry* v. *Wood,* 1 Atk. 445, decided in 1737. Bul. N. P. 242. On the other hand, in *Lord Morely's Case,* Kelyng, 53, 55, it was resolved by the judges in advice preliminary to the trial that the coroner might read the examination taken by him of witnesses who testified before him and who were dead or unable to travel, or who were procured to be absent by the prisoner, but might not read such examination of witnesses who were absent and could not be found. It is doubtful whether the rule as thus stated secured to the accused the privilege of cross-examination. That was one of the reasons stated for not extending the rule to a witness who could not be found in *Queen* v. *Scaife,*

17 Ad. & El. 238, 243. The examination before the coroner appears to have been conducted by that official alone. Impey's The Practice of the Office of Sheriff and Office of Coroner, (6th ed.) 516. See also *Regina* v. *Austen,* 7 Cox C. C. 55 at page 59. This statement from Kelyng is found in substance in numerous early English treatises cited in the brief of the defendant. Most of the earlier English cases are discussed in *Regina* v. *Austen,* 7 Cox C. C. 55, decided in the Court of Criminal Appeal in 1856. It was held that a deposition, taken before the committing magistrate in the presence of the prisoners who had the opportunity of cross-examination, was not admissible in a criminal case either at common law or under 11 & 12 Vict. c. 42, § 17, even though the witness was a foreigner and absent from the realm; but a distinction is intimated between testimony given before a committing magistrate or coroner under English practice, and testimony given under circumstances of greater formality. See also 13 Halsbury's Laws of England, 547, note; Taylor, Ev. (11th ed.) § 472, note (g). The English practice as to second trials and the governing statute appear to be so different from the conditions disclosed on the present record under our system of jurisprudence as not to afford guidance for the decision of the case at bar.

The general subject is discussed with fulness in Wigmore on Ev. (2d ed.) §§ 1395–1405. The particular ground of absence from the jurisdiction is treated in § 1404. The conclusion there is stated in substance that, when the witness is out of the jurisdiction, it is impossible to compel his attendance and the party desiring his attendance is helpless, and reproduction of his testimony given at an earlier trial where the witness was subject to cross-examination is admissible. Whether the absence is temporary or under circumstances justifying the introduction of the testimony given at the previous trial, may give rise to questions of difficulty. They do not exist in the case at bar because, as already pointed out, the findings of fact made by the presiding judge were decisive and fully warranted by the evidence. The conclusion that such evidence is admissible

is supported by the great weight of authority in this country as shown by examination of the cases collected in Wigmore on Ev. (2d ed.) §§ 1395–1405. To review them seems quite unnecessary. Only a few cases of that nature, some of them recently decided, need be cited. *State* v. *Gaetano*, 96 Conn. 306, 310, 314. *State* v. *Scott*, 117 Kan. 303, 321. *People* v. *Schepps*, 217 Mich. 406, 411, 414. *State* v. *Jackson*, 30 N. M. 309, 317–320. *People* v. *Fisher*, 223 N. Y. 459, 465. *West* v. *Louisiana*, 194 U. S. 258. *Missouri* v. *North*, 271 U. S. 40, 42. *Hebert* v. *Louisiana*, 272 U. S. 312, 316–317. 1 Greenl. Ev. (16th ed.) § 163g. See cases collected in 15 Am. L. R. 495–564; 21 Am. L. R. 662; 16 C. J. 839.

If the question is examined on principle and apart from authority, the same result follows. The constitutional guaranty that every defendant charged with crime has the right to meet the witnesses against him face to face is not to be tested by a mere enumeration of specific instances of the admission or exclusion of defined evidence. That article in the Constitution states a great principle of government for the security of liberty and the ascertainment of truth in prosecutions for crime. Its purpose was to put beyond the possibility of alteration except by the people themselves the principle already established as a part of the common law that the witnesses should confront the accused face to face. That principle, although imbedded in the fundamental law as a constitutional guaranty, carried with it the well-recognized exceptions which were a part of it and essential to its vitality. It was not designed to affect the settled rules of the common law for determining the competency of evidence under the principle of confrontation of the accused by the witnesses. The general rules of the common law, founded as they are upon "justice, fitness and expediency," are designed to meet and be susceptible of being adapted "to new institutions and conditions of society . . . new usages and practices, as the progress of society in the advancement of civilization may require." *Commonwealth* v. *Temple*, 14 Gray, 69, 74. *Commonwealth* v. *Anthes*, 5 Gray, 185, 222–226. One main purpose of the

rules of the common law as to the production of testimony in criminal cases is that its credibility shall be tested by cross-examination. That purpose was achieved in the case at bar. The ground for the admission of testimony given at a previous trial by a witness since deceased or become lunatic is that necessity requires it to the end that justice may be done. The necessity is just as urgent if the witness cannot be found or is without the jurisdiction. Under modern conditions, absence from the reach of legal process is easy as compared with earlier days. Changed conditions afford no warrant for straining the Constitution. But they require that the common law within the limits of the Constitution shall adapt its principles to meet present needs. We are unable to perceive any sound distinction in reason for holding that the principle declared in *Commonwealth* v. *Richards*, 18 Pick. 434, in favor of the admission of testimony previously given by a witness since deceased, in *Temple* v. *Phelps*, 193 Mass. 297, in favor of the admission of testimony previously given by a witness since become insane, and in *Commonwealth* v. *Slavski*, 245 Mass. 405, as to the admission in evidence of a new kind of public document and the numerous cognate cases there reviewed, is not equally applicable to the case at bar. In our opinion no error of law was committed in the admission of the testimony given by the witness at the first trial of the present indictment, and no constitutional right of the defendant under art. 12 of the Declaration of Rights was violated.

5. It is contended that the previous testimony of the absent witness ought to have been excluded because given at an earlier trial where the issues were different. If the issues in the two trials were different, the evidence doubtless would have been incompetent. *Melvin* v. *Whiting*, 7 Pick. 79. The issue was precisely the same at the trial here under review as it was at the first trial. The indictment was the same. The plea was the same. The circumstance that the indictment against Cero for the murder of the same man was tried jointly with the indictment against the defendant, did not change in the least degree the issues against the defendant as developed at the first trial. Even

if it be assumed that the evidence was different in some respects, that would not change the issue. In any event, the defendant would have been equally guilty whether Cero was exonerated or also found guilty.

6. Evidence of the declaration of a person since deceased, made to some third person, offered by the defendant, was excluded. The trial judge made no preliminary finding as to the good faith of the statement and its having been made on the personal knowledge of the declarant, *Commonwealth* v. *Chance,* 174 Mass. 245, 250, but excluded it as matter of law on the ground that G. L. c. 233, § 65, was not applicable to criminal proceedings. That section provides that "A declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant." These are the same words found in R. L. c. 175, § 66. The provision was first enacted in substantially the same language in St. 1898, c. 535, except that the word "suit" was used in place of the word "action." By no possible stretch of meaning can "suit" be held to include prosecutions for crime. "'Suit,' while a word of comprehensive signification, is applied usually in our practice to proceedings in equity, while 'action' is the word descriptive of proceedings at law." *Gould's Case,* 215 Mass. 480, 482. This distinction is not universally maintained. The statute in its original form was applied in the first case arising under it to an action at law in contract. *Brooks* v. *Holden,* 175 Mass. 137. "Action," although a word of broad import, can hardly be interpreted in this connection as intended to include prosecutions for crime. Commonly it describes only civil proceedings. *Boston* v. *Turner,* 201 Mass. 190, 196. *Pigeon's Case,* 216 Mass. 51, 56. There is no indication of a legislative intention to enlarge or vary the meaning of the original enactment by the slight changes in subsequent reënactments. *Main* v. *County of Plymouth,* 223 Mass. 66, 69. *Boston & Maine Railroad* v. *Billerica,* 262 Mass. 439, 449. It was said respecting this statute in *Hall* v. *Reinherz,* 192 Mass. 52, 53, that it "relates to civil procedure only"; and in

*Commonwealth* v. *Stuart,* 207 Mass. 563, 568: "It has been doubted among the profession whether the statute is applicable to criminal proceedings. Apparently it has been assumed not to be so in the trial of an indictment for unlawfully procuring a miscarriage," citing cases. In *Commonwealth* v. *Taylor,* 265 Mass. 133, 134, occurs this: "the evidence offered was the statement of a deceased person, which the judge might well regard as inadmissible in the trial of a criminal case in view of the language of this court in *Hall* v. *Reinherz,* 192 Mass. 52, 53; *Commonwealth* v. *Wakelin,* 230 Mass. 567, 575; and *Commonwealth* v. *Stuart,* 207 Mass. 563, 568." No one, nor all, of these expressions constitute a decision; but, together covering a period of more than twenty years, they are an impressive indication of judicial impression.

The ruling that the statute was not applicable to prosecutions for crime was right.

7. There was no error of which the defendant can complain in permitting Cero to testify when and to whom he first told the story concerning the murder which he told on the witness stand. Cero had, immediately following his arrest shortly after the murder, told a story touching his own and the defendant's connection with the homicide materially different from his testimony at the second trial. That fact had already appeared in evidence. It was material to his own defence and it was not obnoxious to any legal right of the defendant that Cero testified touching the circumstances of his telling a new and different narration. This was not an attempt to bolster up the testimony of Cero by showing corroborative statements on other occasions. Confessedly, Cero had made inconsistent and contradictory statements. The time and conditions when the altered story was first uttered were not immaterial. This does not affect or shake in the smallest degree the rule steadfastly followed by this court to the effect that evidence of statements made at other times in harmony with those made in testimony is inadmissible, save within the very narrow exception to meet the contention of recent contrivance. *Commonwealth* v. *Tucker,*

189 Mass. 457, 479–485. *Commonwealth* v. *Retkovitz*, 222 Mass. 245, 250.

8. When Cero was on the stand, he testified on cross-examination by counsel for the defendant in substance that he never told anybody at any time that someone other than the defendant shot Fantasia. The offer of the defendant to show that someone in the presence of Cero had said that someone other than the defendant had shot Fantasia, and that Cero said that that someone else was dead, had no tendency to contradict Cero. It was rightly excluded as being immaterial. Cases like *Liddle* v. *Old Lowell National Bank*, 158 Mass. 15, 16, and *McGrath* v. *Fash*, 244 Mass. 327, have no relevancy in this connection. If it be assumed that the brother of Cero had testified that he had never heard any one other than Gallo accused of the crime, and the evidence was offered to contradict him, there was no error in the exclusion. The brother was merely a witness. To contradict him on such a matter was remote from the issue on trial and well might have been excluded on that ground.

Cero had testified in substance that in 1928 his brother, dressed in black, visited him in jail and told him that his father had died in Italy of a broken heart because Cero was in jail. The offer of the defendant to show by a certificate that the father had died in 1926, before the murder here in question, was excluded rightly. It was remote from any issue on trial. It related to immaterial testimony brought out by the defendant on cross-examination. It had no tendency to contradict Cero because it did not appear that he knew that his father had died until told by his brother in jail in 1928.

9. There was no error in the admission of testimony to the effect that the defendant had ordered cigarettes sent to Cero and had employed a lawyer for him. The relations between these two were a part of the circumstances and might have some bearing upon the guilt or innocence of one or both. One contention of the Commonwealth was that it was for the interest of the defendant to keep on good terms with Cero and lead him to think that everything possible was being

done by the defendant for the real protection of Cero. The evidence cannot be rightly said to be irrelevant.

10. The exceptions to the closing argument of the attorney for Cero and of the assistant district attorney are based on a reference by each to the testimony that one of those to whom Cero, shortly before the time set for his electrocution, made the statement that the defendant was implicated in the crime was the priest at the State prison. The judge promptly instructed the jury that reference to it as a confession or a preparation for death was going too far and should be disregarded. This protected the rights of the defendant. *Commonwealth* v. *Godis*, 266 Mass. 195, and cases cited. As already pointed out, there was no error in the admission of the evidence. In a proper way it was subject to comment in argument.

A careful examination of all the assignments of error has been made. Every point argued by the defendant has been considered. The case was rightly submitted to the jury. There is no error of law.

*Judgment on the verdict.*